**UNITED STATES v. HAAS.**

Cr. No. 13571.

United States District Court,
W. D. Pennsylvania.

July 3, 1952.

Irwin A. Swiss, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Theodore L. Moritz, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is a petition for the return of seized property and the suppression of evidence.

During argument counsel for petitioner with the consent of the accused abandoned that part of the motion dealing with the return of property and pressed only the part of the motion dealing with the suppression of evidence.

The motion is based on two legal principles:

(1) That petitioner was arrested by postal inspectors without warrant authorizing arrest be made.

(2) That subsequent to the arrest and through duress and coercion the postal inspectors required the petitioner to make available the documents which are in part the subject of this criminal action, no search warrant having been secured from a duly authorized federal authority, all of which is violative of the Constitution and laws of the United States of America.

The facts are briefly these:

On August 23, 1951, in the fore-noon, Charles L. Sabo, Jr., foreman in the Parcel Post Delivery Section of the Pittsburgh Post Office, while investigating matters concerning missing mail, saw the petitioner, Mr. Haas, looking into the back of a mail truck. He called him over, told him he was from the Post Office and asked him concerning certain books, the matter under investigation. He told the petitioner, "if you don't tell me, we will get a search warrant and we will search your room." He asked the petitioner to ride with him to see Mr. Evans, a Post Office Inspector in the Post Office Building.

In the Post Office, Inspector Evans questioned the petitioner who, after an hour of interrogation, signed a statement concerning his activities. Petitioner with Mr. Sabo and Samuel T. Cowan, another employee of the Post Office Department, drove in a truck to 704 W. North Avenue in the City of Pittsburgh, the residence of petitioner, who unlocked the door, which was padlocked, opened it and the three walked in. Petitioner helped to unpack the books, put wrappers about them, and carried them out to the truck. Thereupon, he returned to the Post Office where he was interviewed and then told that he could return home.

Petitioner came back to the office of Inspector Evans several times thereafter in response to letters and telephone calls, and several times of his own volition.

■ The evidence conclusively developed that no force, threats or promises of any kind were made to petitioner. He was free to go and come as he pleased. No hand was put on him; he was never told that he was under arrest; no weapons were shown him; no bond was required of him; he was not placed in jail; nor was any complaint lodged against him.

Although the circumstances and understanding of petitioner and the postal inspectors as to what occurred on August 23, 1951 are in dispute, the question resolves itself into one of credibility and the reasonable inferences to be drawn from what transpired. I can reach only the conclusion that petitioner was well aware that he was not being arrested, but was asked to cooperate with the postal inspectors in clearing the complaints assigned to them for investigation.

■ In proceedings for an order in suppressing the use of evidence, the credibility of testimony is for the court. In re Fried, 2 Cir., 161 F.2d 453, 1 A.L.R.2d 996.

A bench warrant was not issued for petitioner's arrest until his indictment by the Grand Jury, approximately seven months after the alleged illegal seizure.

Furthermore, the petitioner, eighty-one years of age, has spent approximately half of his life in penal institutions, and his experiences with the distinguishing characteristics between arrest and investigation were many and manifold.

It is well to comment that petitioner at his old age showed marked intelligence and mental alertness during the hearing and in the presentment of his testimony. My observations of petitioner, therefore, lead to the conclusion that no situation exists which would tend to indicate that petitioner was not fully aware of the nature and extent of his activities; that he knew the nature of the offense which was being investigated, and agreed without hesitation to cooperate with the postal inspectors.

There is not a scintilla of evidence to demonstrate that petitioner at any time during the course of these happenings was not cognizant of his constitutional prerogatives.

The immediate question before the Court, therefore, is whether evidence obtained as the result of a search to which the peti-

tioner is shown to have given his consent should be suppressed as being the product of an illegal search and seizure.

An accused cannot assert the illegality of a search made with his consent though given in response to a threat to procure search warrant. Gatterdam v. United States, 6 Cir., 5 F.2d 673.

The law is clear and unequivocal in support of the principle that evidence obtained as the result of a search to which the interested party is shown to have given his consent is not to be suppressed as being the product of an illegal search and seizure. Shores v. United States, 8 Cir., 174 F.2d 838, 11 A.L.R.2d 635; Grice v. United States, 4 Cir., 146 F.2d 849; In re White, D.C., 98 F.Supp. 895; A. Guckenheimer & Bros. Co. v. United States, 3 Cir., 3 F.2d 786.

In the search of a dwelling made by consent, no search warrant is necessary. Schutte v. United States, 6 Cir., 21 F.2d 830.

The petitioner's arrest subsequent to the indictment irrefutably satisfies the Court that probable cause for said arrest existed. Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1; Spector v. United States, 9 Cir., 193 F.2d 1002.

In view of the foregoing, the Government would not be required to return the evidence secured on August 23, 1951. Such contraband would be admissible to establish the motive, intent, and system of the accused. United States v. Nettl, 3 Cir., 121 F.2d 927.

The Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. On August 23, 1951, Charles S. Sabo, Jr., foreman in the Parcel Post Delivery Section of the Pittsburgh Post Office, in investigating matters concerning missing mail, saw the petitioner looking into the back of a mail truck near 704 W. North Avenue, Pittsburgh, Pennsylvania. Mr. Sabo called over the petitioner, asked him about certain books and asked him to go with him to the Post Office to see Inspector Evans.

2. In the Post Office Inspector Evans questioned petitioner concerning fictitious orders for books sent to various publishers under various names. The petitioner signed a statement concerning his activities and fraudulent book orders.

3. The petitioner, in the company of Mr. Sabo and another employee of the Post Office, drove to his residence where the petitioner took out a key from his pocket, unlocked a padlocked door to his room where they all entered and where he helped the post office employees to gather the books, wrap, pack and carry them to the truck.

4. The petitioner consented and voluntarily turned over the books to the post office agents.

5. At no time in the steps taken did the post office agents use or show any force, make any threat or promise any immunity or reward.

6. The petitioner was not in unlawful custody or under arrest.

7. The petitioner is 81 years old, experienced in matters of arrest and in his lifetime, approximately half of which was spent in jails, had many brushes with the law.

8. The petitioner abandoned that part of his motion relating to the return of the property seized.

### Conclusions of Law

1. Evidence obtained as the result of a search to which the defendant is shown to have given his consent is not to be suppressed as being the product· of an illegal search and seizure.

2. Search by consent requires no warrant.

3. There was no unlawful arrest or custody of the petitioner.

4. There was no unlawful search or seizure but the search that was made was consented to and the property obtained was voluntarily surrendered by the petitioner.

5. Petition for the return of seized property and the suppression of evidence is refused.

An appropriate ·Order is entered.