Johnny Wallis and Thomas Quinn Cheney, Plaintiffs
in Error,

*v.*

State of Tennessee, Defendant in Error.

417 S.W.2d 781.

(*Knoxville,* September Term, 1966.)

Opinion filed August 9, 1967.

ROBERT J. SHOCKEY, Chattanooga, for plaintiffs in error.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. Fox, and ALBERT D. NOE, IV, Assistant Attorneys General, Nashville, for defendant in error.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Cheney and Wallis were convicted of receiving and concealing stolen goods and sentenced to three years in the State Penitentiary. They have perfected their appeal, assigning errors which make the contention they were arrested without a warrant and without probable cause to believe they were guilty of a felony and that the sole evidence connecting them with the stolen property was disclosed by a search which, even though incident to their arrest, should have been suppressed on their motion on

the ground the search was an illegal, unconstitutional invasion of their state and federal rights to be free from such a search and seizure. Specifically the assignments of error are:

"I. The Court erred in overruling the motion to suppress, and permitting into evidence, the cameras found in the trunk of the Defendant Cheney's automobile when such evidence resulted from an unlawful search and seizure.

II. The Court erred in overruling the motion to suppress, and permitting into evidence, the cameras found in the trunk of the Defendant Cheney's automobile when such evidence resulted from an unlawful arrest.

III. The Court erred and abused the discretion of a trial judge in denying defense counsel its right to cross-examine the witness Malone as to the identity of the 'informant', when there was sufficient evidence to show that officer Malone's testimony regarding the 'informant' was inconsistent, unreliable, and in direct conflict with his previous testimony.

IV. The Court erred in denying the defense counsel's request to know the name of the informant after a proper showing that the testimony concerning such 'informant' was inconsistent and highly questionable.

V. That the Defendants conviction was secured by the introduction of evidence obtained by virtue of an unlawful arrest and an unlawful search and seizure, in violation of their constitutional rights, particularly Article V, Amendments to the U. S. Constitution."

The record discloses that sometime after 6:00 P. M. on May 10, 1966, several cameras valued at $462.83, were stolen from the J. C. Penney Store in the Eastgate Shop-

ping Center in Chattanooga, Tennessee. There were no eye witnesses to the theft. Mr. Robert Hodge, who was employed in the camera and binocular department, testified that on the night of the theft he had shown some binoculars to the defendants. That he noticed the presence of a Negro youth on the other side of the department but never saw the two defendants with the Negro youth. Mr. Gayland Good, manager of the camera department testified that he was out of the department at the time of the theft but was notified by another employee that cameras were missing. Afer going to the counter and ascertaining this to be the fact, Good proceeded out of the store and onto the mall area of the shopping center to look for a Negro youth who had been described to him. At this time Hodge came out and identified the Negro as the one he had seen in the department, and the two tried to follow him through the shopping center. Mr. Hodge, was unable to keep up. But Mr. Good followed the suspect into a parking area and saw him get into a white, 1959 of 1960 Ford Thunderbird automobile in which two white boys were waiting. Good took down the license number from the Georgia license tag and notified the police. As the car was moving at that time, Good got the last two numbers transposed with the two preceding numbers. He testified that one of the boys got out to let the Negro in the car and that he later, (after his arrest), recognized him to be defendant Cheney. He did not know any of the three men in the automobile at the time it drove away and had not seen any of them commit any offense against the law. Sgt. J. B. Carr of the Chattanooga Police Department testified that while he was off duty and shopping with his wife, he met the defendants coming out of the J. C. Penney Store, and that one of

them bumped into his wife. He was personally acquainted with defendants, and they appeared to be walking fast.

The arresting officer, Kenneth Malone, testified that on the evening of May 10, 1966, he received information the two defendants, by name, were involved in a larceny at the J. C. Penney Store and that they were in a 1958 to 1960 white, two-door Thunderbird automobile bearing a Georgia license, No. 15J 7642. He was informed the numbers might not be in order since the car was moving when the informant took the numbers down. Soon after receiving this information, officer Malone observed a white Thunderbird automobile in the 100 block of East Ninth Street in Chattanooga bearing the license No. 15J 4276; the same numbers as supplied in his information except that the last two digits were reversed. He testified that he and the officer with him went into the Volunteer Recreation Building located about one parking space from where the Thunderbird automobile was parked, to look for Cheney, whom he knew. Inside the building, Malone asked if anyone in the pool hall knew to whom the white Thunderbird belonged and not getting a satisfactory answer and not seeing Cheney, he went back outside where he was met by another officer who knew Wallis. Both officers went back into the building and there found Cheney and Wallis. They arrested them and took them outside the building. After they denied owning the Thunderbird, they were searched and a set of keys was found on Cheney. Cheney denied the keys were to the Thunderbird but Malone took the keys and opened the trunk of the car where he found the stolen cameras. However, before Malone could testify with respect to what he found in the automobile trunk, defense counsel objected, and the jury was excused, in order that the question of the validity of the search and seizure might be inquired into.

In the absence of the jury defense counsel sought to examine Malone concerning his information and informant. This cross-examination was based on defense counsel's belief that officer Malone actually had not gotten information from anyone who knew, or professed to know, that Wallis and Cheney had in fact committed a felony by larceny, or by receiving and concealing stolen property. That all of the information the arresting officer actually had was that a Negro boy who had been suspiciously close to the counter where cameras were stolen was seen getting in a white Thunderbird automobile, year model 1958 to 1960, with two white boys, and that the car was then driven away; and that defendants had been seen leaving the store quickly by an off duty officer. That the reverse order of numbers as taken down by Good, and as reported by the alleged informant tended to prove this.

However, in undertaking to develop this theory by cross-examination of Malone, the Court sustained state counsel's objections so as to prevent the theory from being fully explored and the truth with respect to it disclosed. Malone was prevented on objection from disclosing either the identity of his informant; or where the information was related to him; or anything else that might have tested the reliability of either information or the informant.

Moreover, it is clear from the record that the question of the reliability of the alleged informant was not considered or passed on by the trial judge. Instead, the bare statement of the arresting officer that he had information was alone accepted as justification for the arrest and search.

In view of this we think the defendant's assignments on the federal and state unconstitutionality of the search must be sustained.

■ In *Simmons v. State,* 198 Tenn. 587, 281 S.W.2d 487, this Court made it crystal clear that where an officer makes an arrest without a warrant, on the basis of alleged reliable information possessed by him that a felony has been committed it is the duty of the trial judge, upon objection to the evidence gained by a search made in connection with such an arrest, to conduct an inquiry for the purpose of satisfying himself, as a judge, that the arresting officer actually had information that a felony had been committed, and that the information came from a reliable and dependable source. Although the primary point decided in that case was that a defendant had no constitutional right to require the disclosure of the informant's name, and that this would be left to the discretion of the trial judge, the opinion clearly recognized that it was the duty of the trial judge, in determining whether to withhold or disclose the name of the informant, to investigate, and satisfy himself, as to the reliability and dependability of the informant, and to either disclose or withhold the name of the informant as the informant's identity might bear on the question of his reliability. This obligation is recognized in the opinion in this language:

"When it appears to the trial court that the informant may not be reliable or that the information that is given the officer by the informant is not sufficient to reasonably convince him that a felony is about to be committed then certainly the trial court should sustain the objection and not admit the evidence and thus release the accused but when it appears to the trial court that

the evidence is sufficient for a reasonable basis that a felony is about to be committed clearly then the evidence obtained by an arrest following this information seems to us adequate. *The trial court is thus determining whether such information is reasonable and not the officer."* Emphasis supplied. 198 Tenn. 594, 281 S.W.2d 490.

*Beck v. State of Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), states the rule under the fourth and fourteenth amendments to the Constitution of the United States. Beck was arrested by officers who had neither an arrest warrant nor a search warrant. On a search of his person they found clearing house slips such as were used in the "numbers game" racket. In spite of Beck's motion to suppress the clearing house slips as evidence obtained by an unreasonable search and seizure in violation of the fourth and fourteenth amendments, he was convicted in the trial court and his conviction affirmed, ultimately, in the Supreme Court of Ohio.

In reversing, the federal Supreme Court pointed out that the trial judge had made no finding of facts with respect to the arrest simply stating as a conclusion: "A lawful arrest has been made, and this was the search incidental to that lawful arrest." About this the Court said:

"When the constitutional valility of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 [555, 39 A.L.R. 790]. If the court is not informed of the facts upon which the arresting

officers acted, it cannot properly discharge that function.''

\* \* \* \* \* \*

''It is possible that an informer did in fact relate information to the police officer in this case which constituted probable cause for the petitioner's arrest. But when the constitutional validity of that arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible. We may assume that the officers acted in good faith in arresting the petitioner. But 'good faith on the part of the arresting officers is not enough.' *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 [138]. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects' only in the discretion of the police.'' 379 U.S. 96, 85 S.Ct. 229, 13 L.Ed.2d 148.

■ In the more recent case of *McCray v. State of Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), this ruling in Beck is reaffirmed. (Opinions in both cases were written by Mr. Justice Stewart). Although the primary inquiry in McCray had to do with whether the trial judge could constitutionally permit the name of the informant to be withheld, (and the ruling was that where its disclosure was not necessary in the judge's opinion to determine the reliability of the informant it could be withheld), it is again recognized that it is the duty of the trial judge to satisfy himself on the basis of an evidentiary investigation that the arresting officer's informant is a reliable, dependable source of information

in the particular matter under investigation. And, that it is only upon the basis of this investigation and judgment by the trial judge, which protects against illegal, unconstitutional arrest and search without a warrant, that the public policy rule permitting such arrests and searches, and the withholding of the informant's name can be justified.

So, since the constitutional safeguard of an independent investigation by the trial judge of the reliability and dependability of the arresting officer's informant was not made, and since there is nothing in the arresting officer's statement to prove the reliability of the informant; and since the bare statement of the officer that he had information was accepted and defendant's counsel was not permitted to cross-examine fully with respect thereto, the case is reversed for a new trial.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.