Opinion by
Hannum, J.,
This is the defendant’s appeal following a conviction of forgery.
On September 27, 1965, attorney Robert Kleckner, late of the Lehigh County Bar, was found dead in his office by his secretary. The death was unattended and therefore the Allentown Police were summoned and they commenced an investigation relative to the unattended death of Mr. Kleckner, as is the practice in Le-high County. Later that day the defendant, Leslie Szukics, appeared at the Office of the Recorder of Deeds of Lehigh County with a deed conveying premises, 224 North Ninth Street, Allentown, and 1617 Hamilton Street in the City of Allentown, from Attorney Kleckner and his wife to the defendant.
Further, during the course of the investigation it was discovered that Mrs. Kleckner never signed any such deed although a signature purporting to be hers was on the deed which was in the possession of the Recorder of Deeds of Lehigh County. It was later discovered that this deed was prepared at the instance of the defendant by a Mrs. Margaret Toth.
The defendant had also taken the same deed to the office of Paul Delong, a notary public, in order to have an affidavit affixed thereto and told the notary that the signatures on the deed were those of both attorney Robert Kleckner and his wife.
During the course of the investigation the Allentown Police secured from the wife of the defendant a deed to another property which had previously been conveyed to the defendant by Mr. and Mrs. Kleckner.
Sergeant James D. King, who qualified as an expert in the field of handwriting, testified that in fact the *520 signatures on the deed which the defendant tried to record on the date of Mr. Kleckner’s death had, in fact, been traced from the bona fide deed whereby Mr. and Mrs. Kleckner had conveyed other property to the defendant. The signatures were declared to be forgeries by the Sergeant.
Subsequently the defendant was arrested and charged with the crime of forgery and the case went to trial before President Judge Kenneth H. Koch on June 15, 1966, and the jury returned a verdict finding the defendant guilty as charged.
Subsequently motions in arrest of judgment and motions for a new trial were filed and heard by the court sitting en banc and denied. This appeal followed.
The appellant raises seven questions in connection with this appeal, as follows: 1. Did the court err in admitting Commonwealth’s Exhibits 2 and 3 into evidence?
2. Was it basic fundamental error to instruct the jury that defense counsel admitted the forgery in his closing address and that, therefore, the jury need not determine whether or not the Commonwealth’s Exhibit 1 was a forged document?
3. Was it basic fundamental error for the court to instruct the jury that Commonwealth’s Exhibit 1 was an admittedly fraudulent document?
4 Was it basic fundamental error to instruct the jury that certain of the testimony of James D. King, Elizabeth E. Kleckner and Eosa Szukics was unimportant?
5. Does the court’s charge on circumstantial evidence contain basic and fundamental error?
6. Did the court err in not permitting the testimony of Donald Miller and Eaymond Scheffy?
7. Should the court have sustained defendant’s demurrer and is there sufficient evidence to support the *521 jury’s verdict under the facts and the law of the case?
The circumstances as to how the Commonwealth obtained Exhibits 2 and 3 appear to be as follows: The record discloses that on September 29, 1965, the defendant appeared voluntarily at Allentown Police Headquarters pursuant to a request made of him by the police. He remained at Allentown Police Headquarters for several hours and apparently was interrogated in connection with an investigation being made into the circumstances surrounding the death of Robert Kleckner, which had occurred two days before.
Some time between 10:00 p.m. and 11:00 p.m., while the defendant was at Headquarters, the First Assistant District Attorney of Lehigh County, Wallace Worth, Esq., accompanied by Detective Robert Sperling and two or three other police officers, went to the defendant’s apartment, where the defendant and Ms wife resided, at 223 North Fountain Street, Allentown, Pennsylvania. Detective Sperling carried with him Commonwealth’s Exhibit 2, which has been identified as a “Consent To Search,” which read as follows: “Consent to search: I the undersigned agree to the search of my apartment located at 223 N. 9th St., 2nd floor by officers of the Allentown Police Dept, and representatives of the District Attorney’s Office of Le-high Co. Penna.
“I further agree and give my consent to have any of my property removed from my apartment by Officers of the Allentown Police Dept, that they may feel they need in the investigation of a possible crime they feel has been committed in the city of Allentown.
“It is understood that any property removed from my apartment will be listed on this consent to search and that the Officers of the Allentown Police Dept, wall have their names affixed to this document.”
*522 After the law enforcement officers gained entrance to the apartment, the “Consent To Search” was presented to the defendant’s wife and she was requested to sign the same. The defendant’s wife admittedly did not understand English well and in particular understood nothing written on the face of the document. She was visibly upset, scared and emotional. She was also aware that her husband had gone to police headquarters and had not returned to their apartment. According to her testimony, Detective Sperling told her that the police had come there to help her husband if she would cooperate.
When she was requested to sign the “Consent To Search,” she testified, she was confused and she asked a friend, Mrs. Toth, what to do. Mrs. Toth undertook to explain certain things to the defendant’s wife, apparently making these explanations in the Hungarian language. According to Mrs. Toth’s testimony, she suggested to the defendant’s wife that the document should be signed if Detective Sperling said it was all right to sign it.
The defendant’s wife signed the “Consent To Search” under the circumstances hereinabove set forth, after which time the apartment at 223 North Fountain Street, Allentown, Pennsylvania, was searched and Commonwealth’s Exhibit 3 was removed therefrom.
At the trial the defendant objected to the admission in evidence of Exhibits 2 and 3, Exhibit 2 because the signature of the defendant’s wife, which was obtained through the use of deceit and misrepresentation, was not a waiver by him of his constitutional rights, and Exhibit 3 because it had been unlawfully obtained as a result of the coerced consent of his wife.
Apparently the only case in Pennsylvania dealing with this Question is Com. v. Wright, 411 Pa. 81, 190 A. 2d 709 (1983). There Mr. Justice Eagen said: “Two *523 questions are raised in this appeal: (1) Does the Commonwealth have the right to appeal from the order of suppression? (2) Was there a valid consent by the defendant’s wife to a search of the apartment so as to waive any constitutional guarantees the defendant personally enjoyed against unlawful search and seizure of his home? ....
“The second question requires attention and is determinative.
“Mapp v. Ohio, 367 U.S. 643 (1961), ruled that ‘all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.’ (page 655). Such rule of exclusion being ‘an essential part of both the Fourth and Fourteenth Amendments. . . .’ (page 657). Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling without a warrant: Agnello v. U. S., 269 U.S. 20 (1925); United States v. Rabinowitz, 339 U.S. 56 (1950). However, it is likewise the law that the constitutional right prohibiting an unreasonable search and seizure may be waived by the defendant personally:[1] Judd v. U. S., 190 F. 2d 649 (1951); Com. v. Bosurgi, 198 Pa. Superior Ct. 47, 182 A. 2d 295 (1962), aff’d 411 Pa. 56, 190 A. 2d 304 (1963); 58 A.L.R. 737 (1929). It has also been held that such consent or waiver is valid even if made under a threat to procure a search warrant: U. S. v. Haas, 106 F. Supp. 295 (1952).
“The federal court decisions, as to whether or not the consent given by one spouse to search their common dwelling house is binding upon the other in his or her absence, are not in accord. In the following instances, the consent was held binding: U. S. v. *524 Heine, 149 F. 2d 485 (2 Cir. 1945), cert. denied 325 U.S. 885 (1945); United States v. Sergio, 21 F. Supp. 553 (E.D. N.Y. 1937). In United States v. Eykowski, 267 Fed. 866 (E.D. Ohio 1920), such consent was held legally ineffective as to the other spouse. However, it is established beyond argument that such consent to be valid must be unequivocal, specific and voluntarily given without the presence of duress or coercion, actual or implied: Amos v. United States, 255 U.S. 313 (1921); Judd v. United States, supra; Johnson v. Zerbst, 304 U.S. 458 (1938). Moreover, searches and seizures made without a proper warrant are generally regarded as unreasonable and violative of the Fourth Amendment and the burden is upon the searcher to prove the presence of consent or waiver by clear and positive testimony: Amos v. United States, supra; Judd v. United States, supra, and Johnson v. Zerbst, supra. Further, it is well established that the consent may not be gained through stealth, deceit or misrepresentation, and that if such exists this is tantamount to implied coercion. United States v. Guerrina, 112 F. Supp. 126 (1953); Moyer v. Brownell, 137 F. Supp. 594 (1956); Fraternal Order of Eagles No. 778 v. U. S., 57 F. 2d 93 (1932) ; United States v. Mitchneck, 2 F. Supp. 225 (1933); Weeks v. United States, 232 U.S. 383 (1914); Gouled v. United States, 255 U.S. 298 (1921); Amos v. United States, supra. Even if we assume, as the Commonwealth contends, that the evidence was obtained without a search, under the circumstances, this is not controlling. The seizure was gained through the use of deceit and misrepresentation. This vitiated the seizure just as effectively as if a search were involved. In addition, it was not made legal by the fact of what was obtained or seized. See, United States v. Asendio, 171 F. 2d 122 (1948); Byars v. U. S., 273 U.S. 28 (1927).”
*525 The Wright case arose upon a petition to suppress prior to trial. A similar petition was presented in the present case, which was heard before Judge Wieand, who ruled that the evidence was not illegally obtained. The same question was again raised during the course of the trial and the trial court held that it was not illegally obtained.
While the trial court was in the better position to see and hear the witnesses and to pass upon their credibility, nevertheless, there are two defects in the instrument itself which we feel are controlling. In the first paragraph the place to be searched is described as “223 N. 9th St., second floor,” whereas the actual premises were 223 N. Fountain Street. In the second paragraph reference is made to “my property removed from my apartment” and signed by Eosa Szukics. Neither the property removed nor the apartment belonged to her.
Since the Commonwealth was attempting to bypass a proper search warrant, which it undoubtedly could have obtained, it was essential that the alleged “Consent To Search” should be technically correct.
We feel that, under the circumstances, the court erred in admitting Commonwealth Exhibits No. 2 and No. 3 and that the defendant is entitled to a new trial upon this ground. This being so, we will not discuss all of the other questions which defendant has raised. Presumably many of them will not occur at a retrial.
Judgment of sentence reversed and a new trial granted.

 Emphasis in the original.