HASKLE THURMAN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 455 S.W.2d 177.

Court of Criminal Appeals of Tennessee. March 12, 1970.

Certiorari Denied by Supreme Court May 18, 1970.

Jack R. Brown, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Edward E. Davis, Dist. Atty. Gen., John R. Seymour, Asst. Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

HYDER, Judge.

This is an appeal in the nature of a writ of error from

a conviction of transporting more than one gallon of unstamped whiskey and a resulting sentence of two years in the penitentiary.

Haskle Thurman was arrested on the morning of October 29, 1968, by two Chattanooga City Detectives and an Agent of the State Alcohol Beverage Control Commission. The detectives approached the defendant when he was in a blue, 1958 Chevrolet automobile, identified themselves, advised him that they had information that he was hauling whiskey, and asked him if he would mind opening the trunk of the car. First, the defendant told them that he did not have a key for the trunk, and Officer Elsea told him: "we can obtain a warrant." According to the testimony of Detective Elsea, the defendant then said, "well, you've got me" and reached into the floorboard and got the trunk key and got out of the car and opened the trunk. The trunk contained seventeen gallons of unstamped liquor or whiskey.

Detective Elsea testified, in the absence of the jury, that the night before this arrest he had received the following information:

"His information was that at approximately 7:00 A.M. the next morning that a 1958 blue Chevrolet would be in the two hundred block of Lookout Street. The car would be driven by a white male who usually wore overalls, dressed in overalls, and there would be around ten to thirty gallons of unstamped whiskey in the automobile."

He testified that he had known this informer for approximately two and a half years, that he had received infor-

mation from him on many occasions, and that the information had always been reliable.

On cross examination counsel for the defendant asked Officer Elsea why he did not obtain a search warrant, and the officer replied: "The informant was not sure on the license number of the car so I couldn't obtain a search warrant." Counsel also inquired if the officer had asked the informer how he knew the whiskey would be in the car, and if he had asked the informer if he had seen whiskey in this car. Officer Elsea stated that he had not asked the informer these questions. He also asked Detective Elsea if he had any information that would have precluded him from stopping any white male driver in a '58 blue Chevrolet; and the officer responded: "No sir."

The officers saw the defendant at six fifty o'clock, A.M., as he drove past them and stopped the car in the two hundred block of Lookout Street, in Chattanooga. The record does not disclose how the defendant was dressed or that he was wearing overalls, nor does the record show that he was a white man.

Counsel for the defendant attempted to obtain the name of the informer, but the trial judge sustained the State's objections to his questions on this subject.

The record discloses that the trial judge had a discussion with Officer Elsea, which is reported as follows:

"THE COURT: In the trunk of this car. Now, Mr. Brown has raised the question of whether or not this information you received was—came from a reliable and dependable person. Now off the record—

(Thereupon a discussion was had between the Court and witness out of hearing of court reporter and counsel.)"

And the trial judge ruled:

"Well, let the record show that the Court has questioned the witness to determine in the Court's own mind whether or not this informant was a reliable and dependable person and whether his information came from a reliable and dependable source. Based on Wallace [Wallis] v. State, 417 S.W.2d 781, under a United States Supreme Court decision cited therein this Court is overruling your motions, Mr. Brown."

The first assignment of error contends that the verdict of the jury is contrary to the law and the evidence in the cause. The other five assignments of error complain that the trial court erred in failing to sustain the defendant's motion to suppress the evidence for the reason that the search of the defendant's car, and the arrest of the defendant, violated his legal and constitutional rights. It is also contended that the trial court erred in limiting defendant's counsel in cross examining the officer relating to the underlying circumstances of the informant's reliability and the credibility of the informant's alleged information; and the procedure followed by the trial judge in "going off" the record for the purpose of determining reliability of the informant and the credibility of the information is assigned as error. It is contended that the trial judge thus deprived the defendant of his right to cross examination and confrontation by this off the record procedure.

The State insists in its brief that the search of the car

was reasonable and the evidence seized was admissible. The State bases this position on the theory that the information received by the officer was sufficient to justify the search.

We do not believe that it is necessary to consider the question of the sufficiency of the information received by the officer to establish the probable cause required in our law to authorize the search of the car without a warrant, because we find that the record is clear that the defendant, without coercion, permitted the officers to see in the trunk of the car with out a warrant. He admitted to them that "well, you've got me."

In Frix v. State, 148 Tenn. 478, 256 S.W. 449, three officers went to the defendant's home, and, before making their presence known, saw through an open door of an outhouse at the rear of the residence some barrels of "beer." The officers then knocked and when the defendant appeared they placed him under arrest. It was then shown, without contradiction, that one officer asked the defendant whether they would be required to go back to town and obtain a search warrant in order to search his premises, or whether he would be willing for them to search his premises without such a warrant. To this inquiry the defendant Frix replied: "Mr. Brown, you are welcome to go anywhere on my place you want to and search. Go to it." In sustaining the conviction of the defendant for unlawfully manufacturing whiskey, or attempting to manufacture whiskey, and in sustaining the search as having been done with the consent of the defendant, our Supreme Court said:

"Here, instead of announcing their intention to search whether permission was given or not, the officers in-

formed defendant that unless permission was given they would be compelled to go back to town and procure a search warrant. There was no coercion about the defendant's subsequent agreement and consent that the search be made without a warrant. He therefore waived his right to require that the officers obtain a search warrant before searching his premises."

Our Supreme Court has ruled consistently that a defendant may waive his rights relative to searches and seizures under the Constitutions of Tennessee and the United States; and that for such a search without a warrant to be valid the entry must be without coercion. Byrd v. State, 161 Tenn. 306, 30 S.W.2d 273; Simmons v. State, 210 Tenn. 443, 360 S.W.2d 10; Shafer v. State, 214 Tenn. 416, 381 S.W.2d 254; Fox v. State, 214 Tenn. 694, 383 S.W.2d 25; Deerfield v. State, 220 Tenn. 546, 420 S.W.2d 649.

The decisions of the United States Courts are in accord. In an opinion in the United States District Court for the Middle District of Tennessee, Simmons v. Bomar, 230 F.Supp. 226, at 229, we find:

"There is no question that one's constitutional right to demand a search warrant can be waived or that one can consent to a search without a warrant. United States v. Jones, 204 F.2d 745 (7th Cir. 1953), cert. denied, 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368. However, this is not presumed, and the burden is upon the state to show that a competent and voluntary waiver has been made. Mere acquiescence or consent in the face of an announced or apparent intention to search with or without a warrant or permission does

not constitute a waiver. See Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); Catalanotte v. United States, 208 F.2d 264 (6th Cir. 1953); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951); United States v. Evans, supra [194 F.Supp. 90, D.C.]

"However, where, as here, the consent is given in response to an announced intention to leave and secure a warrant if permission is not given, the waiver is competent and voluntary. Gatterdam, et al., v. United States, 5 F.2d 673 (6th Cir. 1925); United States v. Page, 302 F.2d 81 (9th Cir. 1962); Grice v. United States, 146 F.2d 849 (4th Cir. 1945); United States v. Haas, 106 F.Supp. 295 (W.D.Pa.1952); Frix v. State, 148 Tenn. 478, 256 S.W. 449 (1923)."

This proposition is well stated in 79 C.J.S. Searches and Seizures § 62(b), page 820, where we find:

"In order to constitute a waiver it must be clearly shown that consent given to an otherwise illegal search was voluntary, that is, that it was free from coercion, duress, or fraud, and not given merely to avoid resistance. Voluntary consent requires sufficient intelligence to appreciate the act as well as the consequence of the act agreed to. Since the constitutional guaranty is not dependent on any affirmative act of the citizen, the courts do not place the citizen in the position of either contesting an officer's authority by force or waiving his constitutional rights, but instead they hold that a peaceful submission to a search or seizure is not a consent or an invitation, thereto, but is merely a demonstration of regard for the supremacy of the law.

It is not a waiver of objection to the illegal search, or a waiver of a valid warrant, or a waiver of the constitutional guaranty. However, a submission to search in response to a threat of the officers that they will procure a search warrant does not make it any the less voluntary, and the mere fact that a search and seizure is made at the instance of an officer or that accused knew the searcher to be an officer does not establish that the consent was involuntary. The party alleging the waiver must establish that the waiver was a free and voluntary act."

The only proof in the instant case on the subject of whether or not the defendant, without coercion, duress, or fraud, voluntarily waived his rights relative to searches and seizures under the Constitutions of the United States and Tennessee, was the testimony of Detective Officer Elsea. He testified:

"I walked up to the defendant's car, advised him who I was, I was a police officer, that we had information that he was hauling whiskey and asked him if he would mind opening the trunk of his car. He said I don't have a key to the trunk and I said, well, we can obtain a warrant. He said, well, you've got me and reached into the floorboard and got the trunk key and got out of the car and opened the trunk."

This testimony was in no way disputed, even though a lengthy hearing was held in the absence of the jury and the defendant had opportunity to testify on that limited question. Certainly the State, having the burden of establishing that the waiver was free and voluntary, has borne that burden in the light of the cases we have

cited. We find that the facts justifying our conclusion that the waiver was free and voluntary are even stronger than those established in Frix v. State, supra, because here we have more than the statement of the defendant consenting to the search; here, the defendant actually opened the trunk for the officers.

The State, in its reply brief, relies upon the recent opinion of the Tennessee Supreme Court in State v. William A. Tolden, 451 S.W.2d 432, filed December 15, 1969, which will be published. We concede that the facts in that case are quite similar to the facts in the instant case, but there the record does not show that the defendant consented to the search. The holding of our Supreme Court in *Tolden* would, of itself, perhaps support the conviction in this case, but there are some differences in the circumstances in the two cases.

In view of our holding that this search and seizure was with the consent of the defendant it follows that the evidence seized was admissible in the trial. There being no other evidence in the case it follows that the jury was certainly justified in their verdict of guilty. The defendant has not borne the burden which is his of showing that the evidence preponderates against the verdict of guilty and in favor of his innocence. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Brown v. State, Tenn. Crim. App., 441 S.W.2d 485.

The unstamped whiskey or liquor seized from the defendant's car was poured out, except one pint which was retained and admitted into evidence at the trial. It can not be contended successfully that, under

the best evidence rule, it was incumbent upon the State to produce the liquor itself in court, though quite an argument was made during the trial on this point. Whiskey of the kind seized by the officers is a familiar article and its identity can be determined by sight, aided either by the sense of smell or by the sense of taste. The best evidence rule is not applicable to things of this nature and the production of such things in court is not required. Williams v. State, 179 Tenn. 247, 165 S.W.2d 377.

The assignments of error contending that the trial court erred in failing to sustain defendant's motion to suppress the evidence, that the trial court erred in limiting defendant's counsel cross examining the officer relating to the informer and the credibility of the alleged information, and the assertion that the trial judge erred in "going off" the record for the purpose of determining reliability of the informant are all overruled. None of these contentions have any merit in view of our holding that the search and seizure were with the consent of the defendant.

■ The defendant was convicted of transporting more than one gallon of intoxicating liquors, and his maximum punishment was fixed by the jury at two years in the penitentiary. In imposing sentence the trial judge ordered that the defendant be confined in the penitentiary for a term of not less than two years nor more than two years. This was error, as is pointed out in the State's reply brief. The minimum sentence for this offense is one year and one day in the penitentiary. T.C.A. § 39-2509. Accordingly, we modify the judgment in this case to be a term of one year and one day to two years in the peniten-

tiary and the costs.  Leek v. State, 216 Tenn. 337, 392 S.W.2d 456.

As modified, we affirm the judgment of the trial court.

WALKER, P. J., and DWYER, J., concur.