Robert E. GOINES, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Oct. 30, 1978.

Victor J. Vaughn, Public Defender, Johnson City, for petitioner.

Brooks McLemore, Jr., Atty. Gen., Robert L. DeLaney, Asst. Atty. Gen., Nashville, Patrick Widener, Martha Sherrod, Asst. Dist. Attys. Gen., Johnson City, for respondent.

## OPINION

HENRY, Chief Justice.

We granted certiorari [1] in this criminal action to determine whether information obtained from an undisclosed informant, standing alone, formed a sufficient basis of probable cause to justify a warrantless arrest. A secondary issue is whether petitioner waived his right to assert this error by failing to move to suppress the evidence.

Petitioner was convicted of possessing heroin, sentenced to serve eleven months and twenty-nine days in the Washington County Jail, and fined $500.00. The Court of Criminal Appeals, treating the issue presented as being "the refusal of the trial judge to require the State to reveal the name of the informant or to require that the informant be called as a witness," [2] held that the State was "privileged to withhold the identity of the informant." Further, the Court held that petitioner waived his right to complain by failure to move to suppress the evidence.

In view of our disagreement with these conclusions we vacate the judgment and remand.

## I.

### Factual Background

The facts are simple and undisputed. A Johnson City police office received information that:

---

1. The grant was limited to two assignments of error, raising the questions considered in this opinion.

2. This is an imprecise statement of the issue.

Mr. Goines was in the Belmont area sitting at a table with another gentleman and two ladies. The information was that Goines had heroin and had been selling the heroin, and had heroin in his possession at that time.

Relying on this, the only information the police officer had, he and another officer proceeded to a housing project located in the Belmont area in Johnson City. Upon arrival they observed petitioner, along with another male and two females, sitting at a table under a tree playing cards. There is no suggestion of any disorderly conduct or of any visible infraction of law.

They parked their automobile and Officer February walked straight over to petitioner, placed him under arrest, "patted him down", and put him in the police car. Nothing was found as a result of this search. His companion, after an affray had been quelled, placed the other male in the police car, without searching him. Both were handcuffed and placed in the back seat of the car.

After they arrived at the police department, petitioner was "strip searched" and a syringe was found inside his sock. The police car was then searched and three packets of heroin were found under that portion of the back seat where petitioner had sat as a passenger.

This prosecution ensued.

## II.

### Pre-trial and Trial Proceedings

Petitioner filed a motion in the trial court seeking "to require the state to reveal the identity of the alleged informant . . . or, in the alternative to require the state to dismiss the indictment" because the informant was a participant and his identity and testimony "is relevant to defendant's guilt or innocence and the revealing of his identity is essential to a fair trial." [3]

On the day of the trial petitioner filed a written motion for "an in-camera examination of the alleged informant." He asserts

four purposes would be served by this examination, which we summarize:

1. To determine whether there was, in fact, an informant.

2. To determine whether the informant gave the police officer any information that would supply probable cause.

3. To determine whether the alleged informant was a participant.

4. To determine whether the informant's life had been threatened or placed in jeopardy so as to justify a refusal to reveal his identity.

Petitioner, in his written motion, further asserted that "the credibility of the alleged informant in this case has been a critical issue since the inception" of this prosecution. He further asserted that the interests of justice require this inquiry and that it should be made in-camera and in the presence only of the trial judge, the District Attorney General, the official court reporter and counsel for the defendant.

These motions were sufficient to raise the critical issues of the existence of an informer, the extent of the information he furnished the police officer, the credibility of the informer, and the good faith of the police officer. These determinations go to the heart of the probable cause issue and, therefore, bear directly upon the legality of the arrest and the constitutionality of the searches and seizures.

At the hearing of these motions the State took the position that the informant "is not a witness to this crime, and we feel that we do not have to reveal his name." The State called Officer February to the stand and asked him four questions. Responding he gave his name, affirmed that he was the prosecutor, that he had received confidential information, and that that information was as quoted in Section I, *infra*.

It is noteworthy that he did not testify, nor did the State otherwise prove, that the informant was reliable or trustworthy or to any experience in relying upon information obtained from him.

---

**3.** The record does not support either of these allegations.

The trial judge overruled the motions without significant comment.

The petitioner made no motion to suppress nor was there any objection made contemporaneously with any of the pertinent testimony. A motion for an acquittal predicated upon an absence of probable cause and the illegality of the ensuing searches and seizures was made at the conclusion of the State's proof, and overruled. It was renewed at the conclusion of all the proof and again overruled.

These issues formed a substantial part of petitioner's motion for a new trial and of his insistence in the Court of Criminal Appeals.

### III.

*Probable Cause—Information Supplied
by Informant*

The issues we address are deeply rooted in probable cause. This follows from the fact that the constitutional validity of the search and seizure is wholly dependent upon the legality of the warrantless arrest, which, in turn, must be bottomed upon probable cause. This determination depends upon "whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had *reasonably trustworthy* information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." (Emphasis supplied). *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964).

Our courts, state and federal, have considered the matter of probable cause as supported by disclosures made to police officers by informants, and have sought to balance the State's privilege to withhold disclosure of the identity of informants against the fundamental requirements of fairness. In so doing certain rules have emerged.

The privilege must yield and the identity of the informant must be disclosed when his identity or "the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair deter-

mination of a cause," *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957); *see also Simmons v. State,* 198 Tenn. 587, 281 S.W.2d 487 (1955); or when the informant is a participant in the crime, *State v. Campbell,* 549 S.W.2d 952 (1977); or when he has knowledge favorable to an accused. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

But the precise question with which we deal is not disclosure of the identity of the informer. There is no showing in the instant case that the informer was an eyewitness or a participant. Indeed, his very existence is questioned. Nor is there any showing that the contents of his alleged communication would have been helpful to the accused, nor that he had any knowledge favorable to him. This, however, does not end the inquiry.

We are concerned with the rules governing the action of a trial judge when a challenge is made to the existence and credibility of the informer and the entitlement of law enforcement officers to rely upon information so obtained. A resolution of cases and controversies involving these considerations does not necessarily require identity disclosure. We recognize that the use of informants is a vital, and perhaps indispensable, part of society's defense against the ravages of the illicit traffic in drugs, and that forcing an undercover agent or informer to "blow his cover" is generally not in the public interest.

We must balance against this, however, the right of the citizen to be secure in his person and possessions against false charges secretly made by the hidden faces of false accusers, or even worse, by overzealous officers of the law relying upon non-existent informants. Hence, the existence and credibility of an informant and the bona fide character of the law enforcement officer's reliance on such information must be the subject of penetrating analysis and searching scrutiny by trial judges. Indeed, the law so requires.

A law enforcement officer may arrest, without a warrant, upon "reliable and cred-

ible" information that a felony has been committed. *Jones v. State*, 161 Tenn. 370, 33 S.W.2d 59 (1930), reaffirmed in *Simmons v. State*, 198 Tenn. 587, 281 S.W.2d 487 (1955).

In *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) the Court reversed a warrantless arrest and search, stating:

When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed. (Citations omitted). If the court is not informed of the facts upon which the arresting officers acted, it cannot properly discharge that function.

\*       \*       \*       \*       \*       \*

It is possible that an informer did in fact relate information to the police officer in this case which constituted probable cause for the petitioner's arrest. But when the constitutional validity of that arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and *why the officer thought the information was credible.* We may assume that the officers acted in good faith in arresting the petitioner. But "good faith on the part of the arresting officers is not enough." (Citations omitted). If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police. (Emphasis supplied). 379 U.S. at 96–97, 85 S.Ct. at 228–229, 13 L.Ed.2d at 148.

The Court is simply saying that the information must be credible and the officer's acceptance of its credibility must be founded in reason. Credibility of the informant and the reliability of his information are the touchstones of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and these factors must be shown by the prosecution when a challenge of probable cause is made in a no-warrant arrest based upon information supplied by an informant.

In *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) the Court makes it clear that it is the duty of the trial judge to satisfy himself on the basis of an evidentiary hearing that the informant's information is credible and reliable.

Perhaps the most significant case pertinent to the issue under discussion is *Wallis v. State*, 220 Tenn. 400, 417 S.W.2d 781 (1967). There the Court, speaking through Mr. Justice Humphreys, reversed and remanded because the "constitutional safeguard of an independent investigation by the trial judge of the reliability and dependability of the arresting officer's information was not made."

In *Wallis* the Court relied heavily upon *Simmons v. State, supra*, which, as the Court noted, held it to be "the duty of the trial judge, upon objection to the evidence gained by a search made in connection with [a warrantless] arrest, to conduct an inquiry for the purpose of satisfying himself, as a judge, that the arresting officer actually had information that a felony had been committed, and that the information came from a reliable and dependable source." 417 S.W.2d 784.

We adopt and reiterate these holdings. To justify a warrantless arrest based upon the testimony of an informant, he must be reliable and his information must be credible. When a question as to the reliability and credibility of an informant or his information is fairly raised, it is incumbent upon the trial judge to conduct an evidentiary hearing for the purpose of satisfying himself not only that the informant was reliable but that the law enforcement officer was justified in accepting and acting upon the information so conveyed.

The record in the instant case falls far short of meeting the requisite standard. There was no proof of credibility or reliability. Reference to our cases will indicate that the application of the proper standard

does not necessarily entail a revelation of the identity of the informant.

In *McCray, supra,* the requirement was fulfilled where the officer testified that the informant gave specific information that was corroborated by investigation and that he was personally known to the officer and had in the past given reliable information that resulted in convictions. Similar proof of reliability has been held acceptable in Tennessee cases, such as *Holder v. State,* 490 S.W.2d 170 (Tenn.Crim.App.1972) where there was testimony as to past reliability, and *State v. Parker,* 525 S.W.2d 128 (Tenn. 1975) where the informant had previously supplied reliable information.

We hold on the basis of the record before us, that the petitioner was arrested without probable cause and the resulting searches and seizures were constitutionally infirm under the Fourth and Fourteenth Amendments to the Constitution of the United States and under Article 1, Sections 7 and 8 of the Constitution of Tennessee. This holding, however, will yield to proper findings pursuant to the evidentiary hearing directed in Section V, infra.

## IV.

*Effect of Failure to Move to Suppress*

■ The State correctly asserts the general rule that a failure to object, upon trial, to the legality of an arrest, waives the right to rely upon it on appeal.

■ It is the State's insistence that petitioner's claim should have been asserted by a motion to suppress. Without doubt it would have been better to have moved to suppress or to have objected to the testimony when offered at trial. We cannot say, however, that the illegality of an arrest and an ensuing search may not be asserted by appropriate motions made in advance of trial.

The test must be whether the issue was fairly raised, or phrasing it another way, whether the trial judge was fairly apprised of petitioner's objection or given a reasonable opportunity to consider the matter. *See Dotson v. State,* 2 Tenn.Cr.App. 388, 454 S.W.2d 174 (1970).

It would be manifestly unjust to apply the waiver rule in this case where the petitioner, in advance of trial, fairly apprised the Court of the substance of his objection to the testimony and where on motion for a new trial the Court was again apprised of the petitioner's contentions.

Making a motion to suppress or objecting to the testimony after the trial judge had overruled petitioner's motion and held that there was probable cause for the arrest, would have been an idle ceremony and a useless gesture. The courts do not demand that counsel engage in futile efforts. The trial judge had ruled; the question had been resolved; there was nothing left to decide. Further effort would have been argumentative, repetitious and foredoomed to certain failure.

Moreover, we deal with an error of constitutional proportions. No freedom is more deeply entrenched in Anglo-Saxon jurisprudence than that of freedom from unlawful searches and seizures. When it appears in the record of any criminal case that this constitutional guarantee has been ignored, it becomes the duty of the reviewing court to heed the mandate of § 40–3409, T.C.A. by "render[ing] such judgment on the record as the law demands."

## V.

*Conclusion*

We remand this action to the Criminal Court at Johnson City with instructions that an evidentiary hearing be conducted on the issues of the existence, credibility and reliability of the informant, the credibility of his information and whether the law enforcement officers were justified in accepting and acting upon it. In the event these issues are resolved in favor of the State the judgment will be reinstated; otherwise the case will be dismissed.

Vacated and Remanded.

FONES, COOPER, BROCK and HARBISON, JJ., concur.