# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 16, 2004

## STATE OF TENNESSEE v. CHARLES O. EMESIBE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-D-2301    Cheryl Blackburn, Judge**

---

**No. M2003-02983-CCA-R3-CD - Filed March 28, 2005**

---

Following a jury trial, Defendant, Charles O. Emesibe, was convicted in count one of first degree felony murder during the perpetration or attempted perpetration of the kidnapping of Ibiene A. Emesibe; in count two of first degree felony murder during the perpetration or attempted perpetration of the kidnapping of Letitia Abili; in count three of first degree felony murder of Ms. Emesibe during the perpetration or attempted perpetration of a burglary; in count four of first degree felony murder of Ms. Abili during the perpetration or attempted perpetration of a burglary; in count five of first degree premeditated murder of Ms. Emesibe; and in count six of first degree premeditated murder of Ms. Abili. The trial court merged counts one and five with count three, and counts two and six with count four. The trial court imposed life sentences for each felony murder conviction and ordered Defendant's two life sentences to be served consecutively. On appeal, Defendant argues (1) that the evidence is insufficient to sustain his convictions; (2) that the trial court erred in admitting certain photographs into evidence; (3) that the trial court erred in ruling certain statements admissible; (4) that the trial court erred in admitting court documents pertaining to Defendant's divorce into evidence; (5) that the trial court erred in admitting the testimony of Ms. Emesibe's attorney concerning Defendant's divorce proceedings; and (6) that the trial court erred in ordering Defendant's two life sentences to be served consecutively. After a thorough review of the record, we affirm the trial court's judgments.

## Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Ross E. Alderman, District Public Defender; Jeffrey A. DeVasher, Assistant Public Defender; and Amy Dawn Harwell, Assistant Public Defender, Nashville, Tennessee, for the appellant, Charles O. Emesibe.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Katrin Miller, Assistant District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Defendant and Ms. Emesibe were married in 1990 and had five children between the approximate ages of five and twelve at the time of the criminal incident in 2002. Ms. Emesibe's sister, Nimi McCoy, testified that her mother, Letitia Abili, moved to Tennessee to live with Ms. Emesibe in October, 2001 in order to help her while she was going through her divorce. Ms. Abili brought Ms. McCoy's two infant daughters with her to Tennessee.

George Copple, Jr., said that he was retained by Ms. Emesibe in October 2001 to assist her in her divorce proceedings. A protective order was issued against Defendant prohibiting him from having any contact with Ms. Emesibe or coming about Ms. Emesibe for any purpose, from possessing a firearm, and from causing or threatening to cause any domestic abuse against Ms. Emesibe or the children. The protective order was effective from November 7, 2001 until November 7, 2002. Mr. Copple testified that the divorce proceedings were still pending and the protective order was in effect at the time of Ms. Emesibe's death.

Mike Anderson testified that his company changed the locks on Ms. Emesibe's home during the summer of 2002.

Patterson Emesibe, Defendant's oldest son, was thirteen years old at the time of the trial. He testified that his sister, Mercedes, and one of his brothers slept with Ms. Emesibe in her bedroom. His grandmother and his two cousins slept in Ms. Abili's bedroom, and he and two other brothers slept in the study. All three bedrooms were located on the second floor. Patterson said that on August 4, 2002, the family went to bed around 9:00 p.m or 10:00 p.m. The security alarm went off around 2:00 a.m. or 3:00 a.m. the following morning. Patterson heard "banging" noises. When they stopped, he went into the hallway and saw his mother lying on the floor at the bottom of the stairs. She was bleeding, and Patterson thought she was dead because Ms. Emesibe was not moving. His sister, Mercedes, was standing in the doorway of his mother's bedroom. Defendant walked up and covered Ms. Emesibe's body with a blanket. Patterson said that Defendant did not appear to be injured at that point. Defendant told the children to go to their rooms, and he and Mercedes obeyed.

Patterson said that he then heard noises from his grandmother's room and woke up his two brothers. Patterson told them that he thought their grandmother was "getting hurt." The boys waited for a minute after the noises stopped, and then went into the hallway. Patterson said that his grandmother was lying on the floor, bleeding, with a gun and two shell casings beside her.

The children gathered in Ms. Emesibe's bedroom. Patterson said the police arrived and called out for someone to unlock the door. Patterson explained that the front door could not open without a key, and that it took a few minutes for the children to find the key. His brother, Galvin, went downstairs to unlock the door but became frightened when he saw his mother's body. Patterson unlocked the door.

-2-

Patterson said that Defendant had not lived in the house for approximately one year. He said that he recognized the gun as Defendant's because Defendant used to keep the gun in the kitchen on top of a cupboard. Patterson said that the gun was not in the cupboard after Defendant moved out. On cross-examination, Patterson said that he had not seen the gun at Defendant's new place of residence.

The deposition of Lucija Glavan, Ms. Emesibe's neighbor, was taken prior to trial and was read to the jury. Ms. Glavan testified that about a year before the shootings, Ms. Emesibe instructed her to call the police if Ms. Glavan ever saw Defendant around Ms. Emesibe's house. Ms. Glavan said that Ms. Emesibe had a bump on her forehead at the time of the conversation.

Ms. Glavan said that she woke up around 3:00 a.m. on August 5, 2002, and read a book before going back to sleep. While she was reading, Ms. Glavan heard Ms. Emesibe's security alarm go off. Ms. Glavan first looked out of her bedroom window which faced the street, but did not notice anything unusual. Ms. Glavan then went to the bathroom window which was across from Ms. Abili's bedroom window. Ms. Glavan heard two or three shots. She then heard Defendant yell, "This is my house." Ms. Glavan said that his voice came from a second-floor bedroom. She heard three to five additional gunshots, and a little girl began crying and screaming. Ms. Glavan went downstairs to call the police, but the officers had already arrived.

Leah Quarles, a 911 dispatcher, said that she received a call from Ms. Emesibe's residence at 3:45 a.m. on August 5, 2001. Ms. Quarles identified the caller as a female who spoke with a heavy accent. The call was disconnected from the caller's end. Ms. Quarles attempted to call the telephone number, but could not get through. Ms. Quarles agreed that the caller could have been a child.

Officers with the Metro Nashville Police Department investigated the crime scene. Officer Timothy Reid responded to the dispatcher's call and arrived at Ms. Emesibe's residence at 3:55 a.m. When he reached the front door, Officer Reid heard a "thud" from inside the house, but he did not hear any voices. He called for back-up. Officer Reid then heard a noise to his right. He shone a flashlight in the direction of the noise and saw Defendant crawling out of a window. Officer Reid said that Defendant was bleeding profusely from an injury to his neck. A child unlocked the front door, and Officer Reid saw Ms. Emesibe lying on the floor by the door. Officer Jeff Brown went upstairs and discovered Ms. Abili's body lying in front of a bedroom door. Two small children were in the bedroom. A handgun and a pair of eyeglasses were located next to Ms. Abili's body.

A neighbor arrived at the scene and told Officer Wolfe that a cab was parked on his property about 150 to 200 yards away from Ms. Emesibe's residence. Defendant's driver's license and insurance card was found inside the cab.

Officer Ron Swanson photographed a baby monitor's receiver that was located by the residence's front door. The baby monitor was found behind the crib in Ms. Emesibe's bedroom.

Officer Daniel Orr said that he found a plastic bag near the front window in the living room which contained some lengths of rope, duct tape, scissors, two pairs of handcuffs, a clock radio, knit gloves, a flashlight, and handcuff keys. Linda Wilson, a latent print analyst with the Metro Nashville Police Department, testified that Defendant's fingerprints were found on the clock radio, his palm prints were found on the outside panes of the living room window, and his bloody footprint was discovered on a bathroom tile in a bathroom adjoining Ms. Emesibe's bedroom. Officer Kendall Jaeger examined the .380 caliber semi-automatic pistol that was discovered near Ms. Abili's body and determined that all nine discharged cartridge cases found at the scene had been fired by the weapon. The serial number of the gun was A94551. Ms. Leslie McCarty testified that she sold Defendant a .380 caliber gun, serial number A94551, in 1990.

Bradley Everett, a forensic scientist with the Tennessee Bureau of Investigation, testified that Ms. Emesibe's blood was found in the master bedroom's bathroom closet and floor, on the stair railing, and on the wall near the front door. Ms. Abili's blood was found on the upstairs bedroom door and on a bullet cartridge. Defendant's blood was found on the upstairs wall near Ms. Abili's body and on the weapon.

Amy McMaster, an assistant medical examiner for Davidson County, performed the autopsies on Ms. Emesibe and Ms. Abili. The cause of death for both victims was multiple gunshot wounds. Ms. Emesibe was shot three times in the neck, left forearm, and back. The gunshot wound to Ms. Emesibe's back pierced her ribs, diaphragm, heart, and lungs and was the fatal injury. Ms. Abili was shot twice in the upper arms, once in the neck, and three times in the back. One of the gunshots to her back caused Ms. Abili's death.

## II. Sufficiency of the Evidence

Defendant contends that the evidence supporting his convictions was entirely circumstantial, and that the evidence was insufficient to exclude every reasonable hypothesis except that of his guilt. Defendant argues that there was no sign of forcible entry into the house, and that he was also shot that night. Defendant submits that the evidence does not exclude the hypotheses that Ms. Emesibe invited him into the residence, that Ms. Abili discovered him in the house and confronted him with the gun, that he and Ms. Abili struggled over possession of the gun, and that numerous bullets were fired during the struggle, striking all three persons. Alternatively, Defendant argues that the State failed to prove beyond a reasonable doubt that Ms. Emesibe's and Ms. Abili's murders were premeditated.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the

evidence along with all reasonable inferences which may be drawn from that evidence. *Id*.; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted of two counts of first degree felony murder with burglary as the underlying felony. The offense of felony murder is defined as the killing of another committed in the perpetration or attempt to perpetrate the underlying felony. Tenn. Code Ann. § 39-13-202(a)(2). Burglary is defined as the entrance into a building without the consent of the owner and with the intent to commit a felony, theft or assault. *Id*. § 39-14-402(a)(3). A burglary becomes aggravated burglary when the building is a habitation. *Id*. § 39-14-403(a). By definition, burglary is a lesser included offense of aggravated burglary because the elements of burglary must be proven in order to support proof of aggravated burglary. *See State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999); *see also State v. Robert Earl Willis*, No. 02C01-9107-CR-00158, 1992 WL 168833 (Tenn. Crim. App., at Jackson, July 22, 1992).

The State's evidence included both circumstantial and direct evidence. A protective order prohibiting Defendant from coming around Ms. Emesibe was in effect at the time of the shootings. Defendant's left and right palm prints were found on the outside panes of a living room window. Defendant was exiting the house from this window when the police arrived. Defendant's fingerprints were lifted from the clock radio that was found with other items in a paper bag in Ms. Emesibe's living room. Defendant's bloody footprint was found on one of the bathroom tiles in the upstairs master bedroom.

Patterson said that he had not seen Defendant at the house before the shootings. He said that the activation of the security alarm woke him up. When he went into the hallway, Patterson saw his mother's body on the floor by the front door. Patterson said that Defendant appeared, covered Ms. Emesibe's body with a blanket, and told Patterson to go back to bed. Defendant did not appear to be injured at this time. A few minutes later, Patterson heard more sounds of struggle. He and his brother waited a few minutes until it was quiet. When they ventured out of their bedroom, the boys found their grandmother's body lying in the doorway of her bedroom. Patterson recognized that the gun by his his grandmother's body was Defendant's gun.

Based on this fact pattern, the jury could clearly reject Defendant's proposed hypothesis that Ms. Emesibe, Ms. Abili, and Defendant were all shot as Defendant and Ms. Abili struggled over possession of the gun. Samples of Ms. Emesibe's blood were found in the upstairs bathroom and on the stair rails leading to the first floor. After he heard noises, Patterson walked into the hallway outside the family's bedrooms and saw his mother lying at the bottom of the stairs. Defendant was

also downstairs and uninjured. The next time Patterson ventured into the hallway, he saw Ms. Abili lying in front of her bedroom door in a pool of blood. Both women suffered fatal shots to the back.

Based upon the evidence presented, and viewing the totality of this evidence in a light most favorable to the State, a rational jury could have found beyond a reasonable doubt that Defendant entered Ms. Emesibe's residence without consent, with the intent to commit a felony, theft or assault, and was responsible for the deaths of Ms. Emesibe and Ms. Abili. The building entered by Defendant without consent in this case was a habitation. There was sufficient proof beyond a reasonable doubt that Defendant committed aggravated burglary, and, therefore, by necessity, burglary.

Defendant next argues that the evidence was insufficient to show that he acted with premeditation and deliberation in the commission of the offenses, and the evidence, therefore, only supports a conviction of second degree murder in counts five and six. Defendant acknowledges that even if this Court found Defendant's argument to be meritorious, Defendant's convictions in counts five and six of the indictment would still be merged into his convictions for first degree felony murder in counts three and four. Defendant is correct.

However, in case of further review, we will briefly address the issue. Premeditation "is an act done after the exercise of reflection and judgment. 'Premeditation' means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time." Tenn. Code Ann. § 39-13-202(d). Intentional "refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id*. § 39-11-302(a).

The presence of premeditation in a killing is a question for the jury and may be inferred from the circumstances surrounding the killing. *See State v. Gentry*, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). Circumstances which have provided the requisite support for a finding of premeditation include:

> (1) the use of a deadly weapon upon an unarmed victim;
> (2) the particular cruelty of the killing;
> (3) declarations by the defendant of an intent to kill;
> (4) evidence of procurement of a weapon;
> (5) preparations before the killing for concealment of the crime; and
> (6) calmness immediately after the killing.

*State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998) (citing *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997)); *State v. West*, 844 S.W.2d 144, 148 (Tenn. 1992); *State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992). Additionally, a jury may infer premeditation from the defendant's planning activities prior to the killing, and the prior relationship with the victim, as well as the nature of the killing. *Gentry*, 881 S.W.2d at 4-5.

Defendant went to Ms. Emesibe's house around 3:00 a.m. with a loaded gun, and the security alarm was activated. Defendant killed his estranged wife with multiple gunshot wounds. He coolly told two of his children to return to bed and covered his wife's body with a blanket. Defendant then went upstairs and shot Ms. Abili numerous times. Both victims were unarmed. No explanation was provided in the proof as to why Defendant was in Ms. Emesibe's house except to kill the victims. The evidence was sufficient for a jury to find beyond a reasonable doubt that the killings were premeditated.

## III. Admissibility of Photographs

Defendant argues that the trial court erred in admitting two photographs of Ms. Abili as exhibits to Officer Brown's and Officer Orr's testimony. Defendant contends that the photographs were not relevant to any issue presented at trial and were highly prejudicial. The first photograph, which was subsequently entered as exhibit 3, shows Ms. Abili lying face down with a gun and a pair of eyeglasses located near her head. Five markers in the hallway denote the location of the bullet casings, an unspent bullet, and the gun's magazine which were found near Ms. Abili's body. Ms. Abili's clothing and the carpet beneath her body are saturated in blood. The second photograph, which was subsequently entered as exhibit 15F, is a close-up shot of the gun, eyeglasses, and bullet casings located near Ms. Abili's head. The carpet is saturated with blood, but the photograph has been cropped to eliminate a view of Ms. Abili's body except for a portion of her arms.

Although not raised by the State, we note initially that Defendant has waived his challenge to the admissibility of the photograph introduced as exhibit 3 for purposes of appeal because he failed to make a timely objection to the introduction of the photograph. *See* Tenn. R. App. P. 36(a). "In order to challenge the introduction of evidence at trial on appeal, counsel must make a contemporaneous objection to the admission of the evidence," either in a motion in limine or at the time the evidence is introduced at trial. *State v. Halake*, 102 S.W.3d 661, 669 (Tenn. Crim. App. 2001). A motion *in limine* alone, however, does not preserve the issue for appeal if the trial court defers ruling upon the motion until a jury-out hearing prior to the introduction of the challenged evidence, even when the issue is included in the defendant's motion for new trial. *State v. McGhee*, 746 S.W.2d 460, 464 (Tenn. 1988).

Defendant filed a motion *in limine* challenging the admissibility of three of the State's photographs of the victims. In a hearing prior to trial, the trial court determined that one of the photographs was inadmissible. The trial court expressed concern that the photograph later entered as exhibit 3 was cumulative in light of the other proposed exhibits, but concluded that this photograph might be admissible if it was necessary to clarify Officer Brown's testimony at trial. The following discussion occurred:

[DEFENSE COUNSEL]:     So if I understand, as to [exhibit 3], which is the
                       eyeglasses –

| [THE COURT]: | Eyeglasses, there is another shot that conveys that and – |
|---|---|
| [DEFENSE COUNSEL]: | Before the State seeks to introduce that, they need to have another jury-out? |
| [THE COURT]: | Yes, absolutely . . . |

The trial court found that the photograph subsequently admitted as exhibit 15F to Officer Orr's testimony was admissible only if the State produced a cropped version of the photograph that eliminated the close-up view of Ms. Abili's head and body. The following transpired:

| [DEFENSE COUNSEL]: | They need to decide whether they are going to crop it . . . . I assume we do not need to renew our objection to [exhibit 15F], if they introduce it in cropped form, I mean, we've made our objection. |
|---|---|
| [THE COURT]: | Right, that's correct. |
| [DEFENSE COUNSEL]: | And we are going to have a jury-out [hearing] about [the photograph proposed as Exhibit 3]? |
| [THE COURT]: | Right. |

Both photographs were introduced into evidence without further objection by Defendant.

Whether or not a contemporaneous objection is necessary following a hearing on a defendant's motion in limine is determined on a case by case basis in light of the pre-trial hearing's record. *McGhee*, 746 S.W.2d at 464. The test is "whether the trial judge was fairly apprised of [the defendant's] objection or given a reasonable opportunity to consider the matter." *State v. Goines*, 572 S.W.2d 644, 649 (Tenn.1978).

In *McGhee*, our Supreme Court held that in cases "where the record on a pretrial . . . motion in limine clearly presents an evidentiary question and where the trial judge has clearly and definitively ruled," the defendant need not renew his objection when the challenged evidence is offered at trial. *McGhee*, 746 S.W.2d at 462. The Court further observed "that in cases where the 'issues are only tentatively suggested or the record only partially and incompletely developed in connection with a motion in limine [sic]. . . [c]ounsel necessarily take some calculated risks in not renewing objections.'" *State v. Alder*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001) (quoting *McGhee*, 746 S.W.2d at 462).

Based on our review of the record of the pre-trial hearing, we conclude that the trial court definitively ruled on Defendant's motion as to the close-up photograph of Ms. Abili that was

subsequently offered as exhibit 15F at trial. The trial court clearly determined that the photograph was admissible if the State altered the photograph so that Ms. Abili's head and body were not visible. The State offered the cropped photograph into evidence, and Defendant was not required to renew his objection at that time.

The trial court, however, specifically reserved ruling on Defendant's motion as to the admissibility of the photograph subsequently introduced as exhibit 3 until further testimony was developed at trial. Under these circumstances, we conclude that the trial court did not definitively rule on the admissibility of this photograph such that Defendant was relieved of the obligation of renewing his objection to the introduction of the photograph at trial. Thus, Defendant has waived this issue with regard to this photograph. *See* Tenn. R. App. P. 36(a).

Nonetheless, we do not find that the trial court's admission of either photograph was error. The admissibility of photographs lies within the sound discretion of the trial court whose ruling will not be overturned on appeal except upon a clear showing of an abuse of discretion. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). The photograph must be relevant to an issue at trial with its probative value outweighing any prejudicial effect that it may have upon the trier of fact. *State v. Braden*, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993).

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "[P]hotographs of the corpse are admissible in murder prosecutions if they are relevant to the issues on trial, notwithstanding their gruesome and horrifying character." *Banks*, 564 S.W.2d at 950-51.

In the present case, the State introduced the photographs to supplement the investigating officers' testimony describing their findings at the crime scene, including the location of the victims, the number of bullets discharged, and the location of blood spatters. The photographs were relevant to show the brutality of the attack and the extent of the victims' injuries from which the jury could infer premeditation. *See State v. Bush*, 942 S.W.2d 489, 515 (Tenn. 1997). We also conclude that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice to Defendant. Defendant is not entitled to relief on this issue.

## IV. Victim's Out-of-Court Statements

During her deposition, Ms. Glavan described a conversation she had with Ms. Emesibe about a year before the shootings as follows:

[STATE]:      How long had [Defendant] not been living in the house?

[WITNESS]:  Probably about a year, about a year prior to the incident that – it was actually Thursday when I saw [Ms. Emesibe] that day. And I was coming home from my job, and I parked my car in front of the garage.

And I got out of the car, and she was coming from the house out [sic]. And I said, hi, and she said, hi. And she asked me if she could speak to me, and I said sure. And we kind of met each other on the half of the yard, because our yards are kind of connecting. And I looked at her face, and she had a big bump on her forehead.

[STATE:]      And did she tell you anything about him not living there anymore?

[WITNESS]:   Yes. She did tell me if I see him around, call the police.

The trial court found that Ms. Emesibe's instruction to Ms. Glavan to call the police if she saw Defendant at her house was not offered for the truth of the matter asserted, and was, therefore, admissible. *See* Tenn. R. Evid. 801(c). Relying on *State v. Smith*, 868 S.W.2d 561 (Tenn. 1993) and *State v. Leming*, 3 S.W.3d 7 (Tenn. Crim. App. 1998), Defendant argues that Ms. Emesibe's statement constituted inadmissible hearsay offered to prove the victim's fear of Defendant.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. Tenn. R. Evid. 802.

The United States Supreme Court recently addressed the admissibility of out-of-court statements by an unavailable declarant in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In *Crawford*, the Court held that a defendant's Sixth Amendment right of confrontation prohibits the introduction of testimonial hearsay unless the declarant is unavailable and the defendant was extended the opportunity to cross-examine the declarant at the time the statement was made. *Id*. at 53, 124 S. Ct. at 1374. A Sixth Amendment analysis rests, in general, upon whether the proffered evidence is testimonial or nontestimonial. *Id*. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law. . . ." *Id.* Regardless of whether the challenged evidence is testimonial or nontestimonial, however, the Court observed that Sixth Amendment concerns do not bar the introduction of out-of-court statements that are not offered for the truth of the matter asserted. *Id.* at 39 n.9; 124 S. Ct. at 1369.

In both *Smith* and *Leming*, the victims' out-of-court statements were offered for the truth of the matter asserted, and admissibility thus centered on whether the evidence fell under one of the exceptions to the hearsay rule, and, if so, whether the statements were relevant. In *Leming*, the trial court found that the victim's out-of-court statement expressing fear of the defendant was admissible under the state of mind exception to the hearsay rule. *Leming*, 3 S.W.3d at 17; *see* Tenn. R. Evid. 803(3). This Court found, however, that Rule 803(3) "'contemplates only [that] the declarant's conduct, not some third party's conduct, is provable by this hearsay exception," and thus may not be used to admit statements offered to prove the defendant's conduct. *Leming*, 3 S.W.3d at 18 (quoting Tenn. R. Evid. 803 (3), advisory commission comments and citing *State v. Farmer*, 927

S.W.2d 582, 595 (Tenn. Crim. App. 1996)). In *Smith*, our Supreme Court found that even if the victim's out-of-court statement is admissible under Rule 803(3), the victim's state of mind is generally not probative on the issue of whether or not the defendant killed the victim. *Smith*, 868 S.W.2d at 573.

Regardless of the impact *Crawford* may have on the analyses employed in *Smith* and *Leming,* in the present case, Ms. Emesibe's out-of-court statement falls into a class of statements which is not considered hearsay. This Court has previously held on a number of occasions that "'[o]rders or instructions are often not hearsay because they are not offered to prove the truth of their content, and similarly, questions are usually not hearsay.'" *State v. Oneal Sanford*, No. E1999-02089-CCA-R3-CD, 2001 WL 681312, *6 (Tenn. Crim. App., at Knoxville, June 18, 2001), *perm. to appeal denied* (Tenn. Nov. 5, 2001) (quoting *Neil P. Cohen, et al., Tennessee Law of Evidence*, § 801.9 at 500 (3d ed. 1995)). For example, a command for the defendant to shoot the victim or a plea for the defendant not to harm the victim are clearly orders or commands not offered for the truth of the matter asserted. *See State v. Derek T. Payne,* No. W2001-00532-CCA-R3-CD, 2002 WL 31624813 (Tenn. Crim. App., at Jackson, Nov. 20, 2002), *perm. to appeal denied* (Tenn. May 19, 2003); *State v. Reginald S. Mabone,* No. 02C01-9203-CR-00054, 1993 WL 270618, at *1 (Tenn. Crim. App., at Jackson, July 21, 1993), *perm. to appeal denied* (Tenn. Oct. 4, 1993).

Similarly, Ms. Emesibe's instruction to Ms. Glavan to call the police was not offered for the truth of the statement, and the hearsay objection was properly overruled. Defendant is not entitled to relief on this issue.

## V. Admissibility of Circuit Court Orders

Prior to trial, Defendant filed a motion *in limine* seeking exclusion on relevancy grounds of the Davidson County Circuit Court's orders in Defendant's divorce proceeding which the State proposed as exhibits to Mr. Copple's testimony. Specifically, Defendant objected to the printed language on the protective order form which states that Defendant "represents a credible threat to the physical safety of petitioner" and shall "be restrained from committing further acts of abuse or threats of abuse against petitioner or petitioner's minor children." Defendant also objected to the admission of the circuit court's orders through Mr. Copple's testimony. Defendant argued that using Ms. Emesibe's divorce attorney to read the circuit court's orders to the jury "only exacerbated the prejudice to the defendant."

Following a hearing outside of the presence of the jury, the trial court redacted certain portions of the circuit court's orders which referred to allegations made by each party against the other, and found the remaining portions of the orders relevant to establishing the nature of the parties' relationship and Defendant's motive and intent. The trial court limited the scope of Mr. Copple's testimony to information concerning his initial retention by Ms. Emesibe, when the exhibits were filed, and why no other actions had occurred in the divorce proceedings between the date of the last order entered and the shootings.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence, however, may still be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. Tenn. R. Evid. 403. The admission of evidence on relevancy grounds is discretionary, and the trial court's discretion will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Harris*, 30 S.W.3d 345, 350 (Tenn. Crim. App. 1999).

In this case, Defendant was charged with two counts of first degree premeditated murder, two counts of first degree felony murder with kidnapping as the underlying felony, and two counts of first degree felony murder with burglary as the underlying felony. Defendant's theory of defense was based upon a contention that there was no evidence that he had forcibly entered the house, and his claim that someone else was responsible for firing the fatal shots that night. Culpable mental states "must [often] be inferentially made from the circumstances surrounding the killing." *State v. Hall*, 958 S.W.2d 679, 704 (Tenn. 1997). "Among the relevant circumstances are facts about the defendant's prior relationship and conduct with the victim from which the jury may infer a motive." *State v. Coulter*, 67 S.W.3d 3, 48 (Tenn. Crim. App. 2001) (citations omitted). In *Coulter*, this Court found that the notes and letters written by the defendant to his wife during the year prior to her murder "uniquely imparted the [defendant's] perspective on his marriage and on his ongoing dispute with his wife, and thus were relevant to the issue of the defendant's motive and intent." *Id.* at 49; *see also State v. Elrod*, 721 S.W.2d 820, 823 (Tenn. Crim. App. 1986) (Statements made by the defendant's estranged wife during divorce proceedings concerning the defendant's sexual abuse and indicating the bitterness of the divorce were relevant to the issue of motive.)

The nature of the Defendant's and victim's relationship as reflected in the divorce documents were relevant to the issues of Defendant's intent and motive and to dispute Defendant's claim that he was not the shooter. The restraining order issued against Defendant was also at least circumstantial evidence that Defendant entered Ms. Emesibe's residence without her consent in support of the burglary charge. Based on our review, we cannot conclude that the probative value of this evidence was substantially outweighed by the risk of unfair prejudice.

Moreover, we are unable to conclude that it was error to permit the introduction of the exhibits through Mr. Copple's testimony. Mr. Copple's testimony was limited and brief, and within the scope set by the trial court. Defendant argues for the first time on appeal that the trial court erred in allowing Mr. Copple to characterize Defendant's and Ms. Emesibe's divorce as "contentious." Defendant did not object to the statement at trial, and this issue is waived for purposes of appeal. Tenn. R. App. P. 36(a).

Although Defendant based his objection to the admission of the divorce documents at trial on relevancy grounds, Defendant also argues on appeal that the documents contained evidence of prior bad acts that was allowed to be introduced without complying with the procedural requirements found in Rule 404(b) of the Tennessee Rules of Evidence. Because Defendant did not raise Rule 404(b) as a basis for his objection at trial, "the trial court did not determine whether the evidence was

admissible for a purpose other than to show propensity and did not weigh the probative value of the evidence when used for this purpose against the danger of unfair prejudice." *State v. Koraskov*, 34 S.W.3d 534, 546 (Tenn. Crim. App. 2000). Accordingly, Defendant has waived his argument on this basis. *See* Tenn. R. App. P. 36(a).

## VI. Consecutive Sentencing

The trial court sentenced Defendant to life with the possibility of parole for each of his felony murder convictions, and ordered the two sentences to be served consecutively upon a finding that Defendant was a dangerous offender. Defendant argues that the evidence does not support the trial court's finding that he is a dangerous offender.

Defendant points out that he was forty-five years old at the time of sentencing and had no prior criminal record other than one misdemeanor conviction in 1993. Even if he serves his two sentences concurrently, Defendant will be in his mid-nineties before he is eligible for parole. In addition, Defendant argues that the acts of violence against the two victims were not a continuing course of conduct that would threaten the public. As a result, Defendant argues that consecutive sentencing is not the least severe punishment necessary to protect the public from future criminal conduct.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely *de novo*. *Ashby*, 823 S.W.2d at 169.

When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115. In this instance, the trial court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(a)(4). If the trial court rests its determination of consecutive sentencing on this category, the court must make two additional findings. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

The imposition of consecutive sentences is also guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *Imfeld*, 70 S.W.3d at 708 (quoting Tenn. Code Ann. §§ 40-35-102(1) and -103(2)); *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

The trial court based its determination that Defendant was a dangerous offender on the nature and circumstances surrounding the commission of the offenses. The trial court noted that Defendant broke into Ms. Emesibe's house while everyone was asleep in violation of the order of protection; that at least one child observed Defendant shoot Ms. Emesibe, or was present immediately after the shooting; that Defendant told his children, Patterson and Mercedes, to go back to bed and then proceeded to kill his mother-in-law; and that multiple shots were fired in the area where the children were sleeping. The trial court found that Defendant's disregard for the safety of his children, their traumatic exposure to the deaths of their mother and grandmother, and the time lapse between the shooting of the two victims supported a determination that consecutive sentencing was related to the severity of the offenses. The trial court found that consecutive sentencing was necessary to protect the public based on Defendant's disregard of the order of protection, the lack of any provocation for the attack, and the killing of two people while the family slept.

Although Defendant argues that consecutive sentencing is not appropriate because of his age, the underlying principle behind consecutive sentencing "is not whether the length of the sentence is logical based on the age of the defendant at sentencing, but whether a defendant should 'escape the full impact of punishment for one of [his] offenses.'" *State v. Timothy Clayton Thompson*, No. E2002-01710-CCA-R3-CD, 2003 WL 21920247 at *5 (Tenn. Crim. App., at Knoxville, Aug. 12, 2003), *no perm. to appeal filed* (quoting *State v. Robinson*, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995)). "The power of a trial judge to impose consecutive sentences ensures that defendants committing separate and distinct violations of the law receive separate and distinct punishments." *Robinson*, 930 S.W.2d at 85.

The trial court properly concluded that Defendant is a dangerous offender. Defendant entered Ms. Emesibe's home in violation of the order of protection against him while the family slept, and fired his weapon multiple times which not only killed the victims, but also endangered the lives of his children. *See State v. Cowan*, 46 S.W.3d 227, 236 (Tenn. Crim. App. 2000); *State v. Baker*, 956 S.W.2d 8, 18 (Tenn. Crim. App. 1997). The circumstances surrounding a criminal episode may be considered in determining whether consecutive sentencing is appropriate. *See, e.g.*, *Imfeld*, 70 S.W.3d at 708-09. We find that the trial court properly considered the requisite criteria for classifying Defendant as a dangerous offender eligible for consecutive sentencing. Thus, Defendant was properly sentenced and is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-14-