IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2009

## STATE OF TENNESSEE v. DARRIN BONNER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-06320     W. Otis Higgs, Jr., Judge**

**No. W2007-02409-CCA-R3-CD  - Filed July 2, 2009**

The Defendant-Appellant, Darrin Bonner ("Bonner"), was convicted by a  Shelby County Criminal Court jury of intentionally evading arrest in a motor vehicle, a Class D felony, and was later sentenced to six years in confinement.  On appeal, Bonner argues that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in admitting hearsay testimony; and (3) the cumulative effect of the errors at trial deprived him of his federal and state constitutional rights.  Following our review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Robert W. Jones, Shelby County Public Defender; Phyllis Aluko, Assistant Public Defender, Memphis, Tennessee (on appeal); Jennifer Johnson and Glenda Adams, Assistant Public Defenders, Memphis, Tennessee (at trial), for the defendant-appellant, Darrin Bonner.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Corliss Shaw, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On July 27, 2006, Bonner was indicted by the Shelby County Grand Jury and charged with intentionally evading arrest in a motor vehicle, theft of property over $10,000 but less than $60,000, and aggravated assault.  Prior to trial, Bonner filed a motion in limine to exclude any statements regarding the theft of property offense because the victim had not previously appeared or testified in court.  The trial court denied the motion in limine based on the State's good faith belief that the victim would be present to testify at trial.  Bonner was tried before a Shelby County jury on all of the above offenses; however, at the conclusion of the State's proof, the trial court granted Bonner's motion for a judgment of acquittal for the theft of property offense because the victim of the theft did not testify.  The jury convicted Bonner of intentionally evading arrest in a motor vehicle but was

unable to reach a verdict for the offense of aggravated assault. Bonner later pled guilty to simple assault as a lesser included offense to the charge of aggravated assault and received a sentence of 11 months and 29 days, to be served concurrently to the previously imposed six-year term of imprisonment.

**Trial.** Paul Myers, a patrol officer with the Memphis Police Department, testified that on April 30, 2006, he was involved in a "stolen vehicle [call] that turned into a pursuit." Officer Myers stated that he was "backup" in the area of American Way and Lamar Avenue when the subject vehicle approached, observed the police vehicles, and made a "u-turn" to go in the opposite direction. Officer Myers testified that the subject vehicle got onto the interstate and when officers "tr[ied] to catch up with it, it continued going." Officer Myers stated that he lost sight of the vehicle when it exited the interstate but he notified other officers by radio of the subject vehicle's direction. Officer Myers went to the intersection at Airways Boulevard and Ketchum Street, the area in which he believed the subject vehicle would be located, and met three other officers. Officer Myers stated that while they were at the intersection, "a vehicle matching the description of the truck [they] were looking for pulled up directly behind [his] vehicle." Officer Myers heard another officer confirm through dispatch that the tags on this truck were the same as the tags on the truck that had been reported stolen. One after the other, the officers got out of their vehicles, drew their weapons, and ordered the suspect out of the truck. When the suspect was ordered to turn the truck off, "[the suspect] hit the gas, tires spun, smoke went, and [Officer Myers] was right in front of the vehicle, and [he] had a choice to either stay there and get hit or jump out of the way. [Officer Myers] [wound] up on top of [his] patrol car." Officer Myers described the moment that the truck came toward him as follows:

> That was the longest second and a half of my life if it lasted that long. Fear - if running me over was what was needed to happen - or if that was going to happen, it didn't seem to bother anybody but me, in terms of myself and the suspect because I was there. Two officers with guns told him to stop. So, striking me was going to be in the sequence of events, I don't think it would have changed anything.

The subject vehicle "fled past" the officers standing outside their vehicles and another officer immediately followed it in pursuit. Officer Myers stated that the officers had their lights and sirens activated on their vehicles during this time, but the suspect refused to stop. The vehicle pursuit ended at an apartment complex; however, the suspect then fled from the officers on foot. When the officers ultimately apprehended the suspect, he was lying on the ground with his arms underneath his body refusing to pull them out. Officer Myers stated that he and another officer had to "forcibly pull [the suspect's] hand out from underneath him to cuff him." Officer Myers identified the suspect driver in court as the defendant, Darrin Bonner.

Dexter Craig, another patrol officer with the Memphis Police Department, testified that he took a vehicle theft report from the victim. Officer Craig testified that the victim had left his cellular phone in the vehicle, called his cellular phone, and the person who answered the phone agreed to return the vehicle to the victim at the Garden Inn Hotel in the area of Lamar and American Way. In all other respects, Officer Craig's testimony corroborated Officer Myers' recollection of the April 30,

2006 event. Additionally, Officer Craig confirmed that all officers involved in the pursuit were driving their patrol vehicles with lights and sirens activated. He stated the vehicle pursuit lasted "maybe five to six minutes." He further testified that he pursued Bonner on foot for approximately fifty feet after the vehicle chase. During the foot chase, Officer Craig heard Bonner repeatedly say, "I can't go back to jail." When Bonner ultimately stopped, Officer Craig stated that Bonner positioned himself "in an aggressive stance[, a] boxer's stance[,] like he wanted to . . . fight [him]."

On cross-examination, Officer Craig clarified that a different officer had been called out to respond to the same vehicle theft report earlier in the day but was unable to make a report.

James Oliver, another patrolman with the Memphis Police Department, was also involved in the vehicle pursuit and testified consistently with Officers Myers and Craig. However, Officer Oliver stated he only had "a quick glimpse of [Bonner]" and only knew that the driver "was a young male black with long dreads."

Mike Schafer, a detective with the Memphis Police Department, testified that following Bonner's arrest, Bonner waived his Miranda rights and provided a statement. The statement was admitted into evidence as an exhibit and read to the jury. Bonner stated, in pertinent part, the following:

> I come down Lamar, and I'm at the light at Lamar and American Way. I'm headed in one direction at the light, and I see a squad car headed in the other direction at the light. I go up a little bit more. I turned around, hopefully going up to the room. I see the squad car move, and it wasn't time for him to move yet at the light. So, I figured I shouldn't go up there right now because I didn't want to be accused of the one who stole the car. I went back towards my area - Airways and Ketchum - and waited for the victim to call back again, I didn't know what room number he was in. By the time I made up my mind to just go up there and just blow the horn, I backed up and pulled out. I drove down the street, and there was three squad cars at the corner. One pulled up like he was trying to let me by. That's when the officer whose car was in the middle jumped out with his pistol aimed at me. I panicked and drove off.

Bonner was asked a series of other questions within his statement. When asked if he made any attempt to "give up," Bonner replied, "No." When asked if he observed any squad cars behind him with blue lights and sirens on during the vehicle pursuit, Bonner replied, "Yes." Bonner also admitted that during the entire situation, he knew that he was breaking the law. Bonner explained, "As far as me running from the police, making the police chase me, yes, I knew that was wrong. It was breaking the law." Finally, Bonner admitted that he was aware that he put the officers' lives and his life in danger when he refused to stop.

Bonner testified at trial that he encountered the police near the intersection of Airways and Ketchum Street on April 30, 2006. While approaching the intersection, he noticed that three patrol cars were blocking the street. Bonner stated that one of the patrol cars moved as if to allow him to pass. As Bonner was passing, he heard a knock on his driver's side widow. He turned around to look

and noticed an officer pointing his weapon at him and yelling. Bonner stated that he was unable to understand the officer because his window was up and he was playing music. He stated that "when I saw the pistol, I panicked and kind of like ducked, and I hit the gas." Bonner stated that he did not stop because he was scared, and he never had "a good encounter with the law. The two times [he had] ever called the law in [his] life, [he was] the one that ended up going to jail." After Bonner drove to an apartment complex, he stated that he exited the vehicle, "took about eight or nine steps," and then stopped. Bonner stated that he realized that the officers had their emergency lights activated and were chasing him after about a half of a mile of driving. When asked on cross-examination if he denied running from the police, Bonner stated, "All I know is the police [were] behind me. No, I don't deny it."

## ANALYSIS

    **I. Sufficiency of Evidence**. Bonner argues that the evidence was insufficient to prove that he fled or attempted to flee from a lawful arrest. Specifically, Bonner contends that "the police had no lawful reason to arrest [him]" because the trial court granted his motion for judgment of acquittal on the theft of property charge. The State argues that the evidence was sufficient to support Bonner's conviction.

    When a defendant challenges the sufficiency of the convicting evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) (2006) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

    The State, on appeal, is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, and this court will not reweigh or reevaluate the evidence. State v. Sutton, 166 S.W.3d 686, 689-90 (Tenn. 2005). This court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

    In this case, Bonner was charged and convicted of the Class D felony offense of evading arrest. Tennessee Code Annotated § 39-16-603(b) provides the following:

        (b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to

elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop.

(2) It is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful.

(3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony.

Here, Bonner challenges the lawfulness of his arrest for the theft of property offense rather than the sufficiency of the evidence for the evading arrest conviction. In effect, he does not dispute that the evidence was sufficient to support his conviction for felony evading arrest. Instead, he claims that his arrest for theft was unlawful because the victim of the theft did not testify at trial and the charge was ultimately dismissed. As a result of the dismissal, he argues that "the only testimony suggesting that [he] did not have permission to be in the vehicle was inadmissible hearsay from police officers." The State responds by stating that "this argument is a non-sequitur that betrays a misunderstanding of fundamental logic." While we agree with Bonner that Tenn. Code Ann. Section 39-16-603(b)(2) provides a statutory defense to prosecution for felony evading arrest where the attempted arrest was unlawful, we conclude that he has failed to properly raise the defense.

The Fourth Amendment to the United States Constitution establishes "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause. . . ." Article I, section 7 of the Tennessee Constitution similarly provides that "the people shall be secure in their persons . . . from unreasonable searches and seizures. . . ." An arrest is therefore unlawful when an officer does not have "probable cause to believe the person to be arrested has committed [a] crime," State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000), or when the officer does not have reasonable suspicion, supported by specific and articulable facts, to believe that a crime has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868 (1968); State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). "Probable cause-the higher standard necessary to make a full-scale arrest-means more than bare suspicion: [It] exists where the facts and circumstances within . . .[the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008) (citing Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302 (1949)) (internal quotations omitted). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" Id. (quoting Goines v. State, 572 S.W.2d 644, 647 (Tenn. 1978) and quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223 (1964)).

Reasonable suspicion, however, is a less demanding standard than probable cause. State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997). Reasonable suspicion for an investigatory stop will be found to exist only when the events which preceded the stop would cause an objectively reasonable

police officer to suspect criminal activity on the part of the individual stopped. State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001); State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause, and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. United States v. Sokolow, 490 U.S. 1, 7 (1989); see also State v. Keith, 978 S.W.2d 861, 867 (Tenn. 1998).

Unlike a constitutional challenge to an arrest, when a defendant relies upon Tenn. Code Ann. § 39-16-603(b)(2) as a defense to felony evading arrest, it must be fairly raised by the proof at trial and submitted to the jury for its determination. T.C.A. § 39-11-203(a)-(d); see also State v. Reginald D. Hughes, No. M2003-00543-CCA-R3-CD, 2003 WL 22748463, at *3 (Tenn. Crim. App., at Nashville, Nov. 21, 2003); State v. Troy Robert Whipple, No. M2004-03047-CCA-R3-CD, 2006 WL 521425, at *6-7 (Tenn. Crim. App., at Nashville, March 3, 2006).

Generally, challenges to the constitutional validity of a stop, based upon a lack of probable cause or reasonable suspicion, are made prior to trial by a motion to suppress. Tenn. R. Crim. P. 12(b)(2). There was no such motion filed in this case. Therefore, Bonner relies solely upon the defense provided by section 39-16-603(b)(2). However, as previously stated, in order to raise this statutory defense, the lawfulness of the arrest must be challenged in the trial court, fairly raised by the proof at trial, and submitted to the jury for its determination. See Tenn. R. App. P. 36(a); T.C.A. § 39-11-203(a)-(d). Here, Bonner filed a motion in limine to exclude the vehicle report and explained in his Mirandized statement that he did not want to be accused of stealing the vehicle, neither of which sufficiently addressed the lawfulness of his arrest. The record further shows that the jury was not instructed on this issue. Accordingly, we conclude that Bonner did not sufficiently raise section 39-16-602(b)(2) as a defense because there was no proof at trial challenging the lawfulness of the arrest, and this issue was not presented to the jury.

Despite Bonner's failure to properly raise the statutory defense provided by section 39-602(b)(2), our review of the record shows that the officers were responding to a dispatch report of a stolen truck when they encountered Bonner. Bonner was driving a truck that fit the description and bore the same license plate tag number as that of the stolen vehicle. In his reply brief, Bonner cites State v. James Eric Bradburn, No. 01C01-9712-CC-00568, 1999 WL 632301 (Tenn. Crim. App., at Nashville, Aug. 19, 1999), and acknowledges that this court has previously held similar vehicle theft reports as "sufficient to establish probable cause" for an arrest. See, e.g., State v. David W. Livingston, No. M2004-00086-CCA-R3-CD, 2005 WL 639125, at *13-14, (Tenn. Crim. App. Mar. 15, 2005) rev'd on other grounds, 197 S.W.3d 710 (Tenn. 2006) (rejecting identical challenge to the lawfulness of the underlying arrest because officers received information third-hand from a dispatcher who was in turn receiving information from a private citizen over the telephone). At the very least, the officers in this case had reasonable suspicion to conduct an investigatory stop. However, in our view, the above facts also establish probable cause to arrest Bonner. In either case, we conclude that Bonner's arrest was lawful. See State v. Bryan Herman Dowdy, No. W2000-01011-CCA-R3CD, 2001 WL 91732, at *4 (Tenn. Crim. App., at Jackson, Jan. 26, 2001) (rejecting identical argument that evading arrest conviction should be nullified because initial stop was not supported by probable cause wherein officer's pursuit of vehicle was based solely on information from dispatcher's report).

Thus, we reject Bonner's contention that the dismissal of an underlying offense at trial amounts to an unlawful arrest as contemplated by section 39-16-603(b)(2), requiring the evading arrest conviction to be dismissed. We further decline Bonner's invitation to revisit this court's previous holdings on this issue and conclude that the evidence was sufficient for a reasonable juror to find him guilty beyond a reasonable doubt of felony evading arrest.

**II.  Admission of Statements Regarding the Vehicle Theft Report.**  Bonner argues that the trial court erred in admitting testimony regarding the vehicle theft report. Specifically, Bonner contends that the officers should have been precluded from testifying about a report of a stolen vehicle because "the victim was not present at trial to testify that the theft occurred." The state argues, and we agree, that the trial court properly admitted the testimony.

The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay evidence is inadmissable. Tenn. R. Evid. 802. However, if the extrajudicial statement is offered to prove the effect on the hearer and not the truth of the matter asserted, then the statement represents non-hearsay and is admissible. State v. Venable, 606 S.W.2d 298, 301 (Tenn. Crim. App. 1980). Our supreme court has held that issues regarding admissibility of evidence "rest within the sound discretion of the trial court and this Court will not interfere with the exercise of this discretion in the absence of a clear showing of abuse appearing on the face of the record." State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007). A trial court abuses its discretion when it applies "an incorrect legal standard or [reaches] a decision which is illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006).

Here, the record shows the testimony regarding the report of a stolen vehicle was not offered to prove that a theft actually occurred. The testimony was offered to prove the effect it had on the officers upon hearing it. It further explained why the officers initiated contact with Bonner. Thus, we conclude that the testimony constituted non-hearsay as it was not offered to prove the truth of the matter asserted. In Bonner's reply brief, he concedes that these statements are not hearsay because "this court might find that [they] were offered for reasons other than the truth of the matter asserted." In the alternative, Bonner argues the vehicle theft report was not relevant, and if so, the probative value was substantially outweighed by the prejudicial effect. Because this issue was not raised in the trial court, we conclude that it has been waived and decline to address it on appeal. See State v. Dobbins, 754 S.W.2d 637, 641 (Tenn. Crim. App.1988) (stating that "a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court"). Accordingly, the trial court did not err in admitting the evidence.

**III.  Cumulative Error.** Bonner argues that the cumulative effect of the errors made by the trial court violated his federal and state constitutional rights. However, Bonner concedes in his reply brief that challenges to the sufficiency of the evidence coupled with the allegation of a single error does not amount to cumulative error. See State v. Phillip Eugene Johnson, No. W2006-00503-CCA-R3-CD, 2007 WL 763214, at *7 (Tenn. Crim. App., at Jackson, Mar. 13, 2007), perm to appeal denied (Tenn. Aug. 13, 2007). Accordingly, this issue is without merit.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the trial court.


_____
CAMILLE R. McMULLEN, JUDGE