IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 20, 2016 Session

## STATE OF TENNESSEE v. WILLIAM WAYNE ESKRIDGE

**Appeal from the Criminal Court for Washington County**
**No. 37151     Robert E. Cupp, Judge**

---

**No. E2014-01800-CCA-R3-CD – Filed January 17, 2017**

---

The Appellant, William Wayne Eskridge, was convicted in the Washington County Criminal Court of driving under the influence with a blood alcohol content of .08 percent or greater (DUI per se), and the trial court imposed a sentence of eleven months and twenty-nine days in jail. On appeal, the Appellant contends that the evidence is insufficient to support his conviction and that the trial court violated his due process rights by summarily denying his motion to suppress without an evidentiary hearing because he was not present for the hearing. Upon review, we conclude that the evidence is sufficient but that the trial court committed reversible error by summarily denying the motion to suppress. Therefore, the Appellant's conviction is reversed, and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Cameron L. Hyder (on appeal), Elizabethton, Tennessee, and Clifton L. Corker (at trial), Johnson City, Tennessee for the appellant, William Wayne Eskridge.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Anthony Wade Clark, District Attorney General; and Robin Ray, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In July 2011, the Washington County Grand Jury indicted the Appellant for DUI and DUI per se. The Appellant filed a pretrial motion to suppress, which the trial court summarily denied when the Appellant failed to show up for the suppression hearing. During the Appellant's first trial, the trial court declared a mistrial.[1] The Appellant was retried in July 2014.

At trial, Trooper Johnathan Street of the Tennessee Highway Patrol testified that on February 23, 2011, he was on patrol on "U.S. 11E" when he saw a white Hummer change lanes by making a "large . . . swerve" and without signaling. Trooper Street began following the Hummer "to make sure the vehicle wasn't going off the roadway" and saw the vehicle drive across the fog line for a short distance.

Trooper Street activated his patrol car's blue lights near the red light at Allison Road. The Hummer, which was in the right lane, stopped on the shoulder of the road. Trooper Street exited his patrol car, approached the driver's side of the Hummer, and spoke to the driver, who was the Appellant. A passenger was also in the car. Trooper Street said that during traffic stops, he usually identified himself and told the driver the reason for the stop; however, due to the time that had elapsed since the Appellant's stop, he could not recall what he specifically said to the Appellant.

Trooper Street recalled that he asked the Appellant "for documents" such as his driver's license and insurance and that the Appellant retrieved the proper documents. As they spoke, Trooper Street smelled alcohol. He asked the Appellant about the odor, and the Appellant said that he had been at Bailey's Sports Bar, drinking and playing cards or pool with friends. Trooper Street noticed a twelve-ounce can of Budweiser beer in the vehicle. The Appellant stated that the can "was not from that day," which the trooper could not prove or disprove. The Appellant told the trooper that he was a paramedic.

Trooper Street asked the Appellant to exit the vehicle to perform field sobriety tests. When the Appellant stepped out of the vehicle, Trooper Street again smelled alcohol on the Appellant's breath. Trooper Street instructed the Appellant on how to perform the "walk and turn" test and demonstrated the correct way to perform the test. Trooper Street explained that the test had eight "clues" of impairment and that a minimum of two clues suggested impairment. The Appellant displayed three clues,

---

[1] At the motion for new trial hearing, the trial court stated that it was going to "put [the reason for the mistrial] in the record." The court explained that during a break that occurred before the State rested its case-in-chief in the first trial, a juror approached and said, "[J]udge, do we have to hear anymore of this evidence?" The court said that upon learning that the juror had already "made up her mind," it declared a mistrial.

namely "com[ing] out of the instruction stage," stepping off the line, and taking ten steps instead of nine "while going down."

Next, Trooper Street gave the Appellant instructions and a demonstration of how to perform the "one-leg stand." Trooper Street said that two clues suggested impairment and that the Appellant demonstrated three clues, namely swaying, hopping, and putting his foot down early. Trooper Street determined that the Appellant was too impaired to drive based upon the odor of alcohol, the Appellant's driving, his physical appearance, and his performance on the field sobriety tests.

The Appellant agreed to give a blood sample, and Trooper Street transported him to Johnson City Medical Center. A registered nurse took a sample of the Appellant's blood, and Trooper Street transported the Appellant to the Washington County Detention Center. Trooper Street checked the blood sample into the evidence department.

On cross-examination, Trooper Street testified that he remembered the "highlights of the stop" but that he had to use his notes to refresh his memory on certain details because three and one-half years had elapsed since the stop. He said that his patrol car was equipped with video recording equipment at the time of the stop but that he learned after the stop that it had not been recorded because of "issues with [the] camera." Trooper Street said that before a traffic stop, he usually performed a "mike test" to ensure the recording equipment was working; however, he could not recall whether he had tested the equipment prior to the Appellant's stop. Trooper Street said that Sergeant Applebus was also present during the stop and that his vehicle was parked behind Trooper Street's patrol car. Trooper Street did not know if the recording equipment in Sergeant Applebus's vehicle recorded the Appellant's performance on the field sobriety tests. He acknowledged that he could not determine from smelling a person's breath the amount or type of alcohol the person had consumed but that he could tell if the alcohol use was recent.

Trooper Street testified that as he was standing beside the driver's door of the Hummer, his conversation with the Appellant was "cordial" and that the Appellant had no problem answering his questions or supplying the requested documents. The Appellant did not have any difficulty walking to the back of his car to perform the field sobriety tests, and his speech was not slurred. Trooper Street recalled that the stop occurred in wintertime and that the Appellant was wearing jeans and cowboy boots. Trooper Street's notes did not indicate whether the Appellant was wearing a jacket or a coat. The trooper could not recall the kind of shirt the Appellant was wearing but acknowledged that being cold could affect a person's performance on a field sobriety test.

Margaret Massengill with the Tennessee Bureau of Investigation's (TBI) Crime Laboratory testified as an expert in forensic toxicology that a representative of the

Tennessee Highway Patrol left the "blood kit" containing the sample of the Appellant's blood in a secure "drop box" at the front of the laboratory. At the end of the day, one of the laboratory's forensic evidence technicians collected the blood kit and put the kit inside a refrigerator in a secure vault in the laboratory. Massengill later retrieved the blood kit from the refrigerator and tested the blood. The blood alcohol content was .10 percent.

On cross-examination, Massengill testified that the drop box was not refrigerated but that samples were "only in the drop box throughout the course of business hours." She acknowledged that biological specimens were best stored in a refrigerated environment. On redirect examination, Massengill testified that the quality of blood specimens was not affected detrimentally by the time spent in the drop box.

The defense called Dr. Glen Edward Farr, an expert in pharmacy. He explained that the human body treated alcohol as a foreign substance of which the body needed to rid itself. In order to do so, the body first absorbed the alcohol, then liver enzymes broke down the alcohol. Dr. Farr explained that "the final kinetic phase is excretion," most of which was "handled through the kidney through the urine."

Dr. Farr testified that beer, which was less concentrated and contained more carbohydrates, would be absorbed by the body more slowly than whiskey. He explained that the alcohol absorption rate was affected by the amount of food a person consumed and by the person's metabolic rate. Dr. Farr opined that the Appellant's blood alcohol content at the time he was driving was not .10 percent but was either more or less. He noted that the Appellant's blood was collected fifty-three minutes after the traffic stop and that he did not know whether the Appellant's metabolization of the alcohol was increasing or decreasing at the time of the stop, which depended partially on when the alcohol was consumed. He estimated that the Appellant's blood alcohol content at the time of the stop was between .06 percent and .13 percent.

On cross-examination, Dr. Farr testified that .06 percent and .13 percent "would be the predicted range [of possible blood alcohol content] based on the different metabolic rates, not knowing" how much alcohol the Appellant drank and when he drank, when and how much he ate, and his personal metabolic rate.

At the conclusion of the proof, the jury found the Appellant guilty of DUI per se but acquitted him of DUI. The trial court sentenced the Appellant to eleven months and twenty-nine days, with forty-eight hours[2] to be served in confinement and the remainder on probation.

---

[2] We note that the judgment of conviction erroneously states that the Appellant is required to serve forty-eight days in jail instead of forty-eight hours.

## II.  Analysis

### A. Sufficiency of the Evidence

The Appellant contends that the evidence is insufficient to sustain his conviction of DUI per se because his expert testified that his blood alcohol content was between .06 percent and .13 percent at the time he was driving; therefore, the State failed to prove beyond an reasonable doubt that his blood alcohol content was above .08 percent at the time he was operating his vehicle.  The Appellant notes the trooper's testimony that he did not stagger or have slurred speech and that he complied with the trooper's requests and answered questions clearly, which suggested he was not intoxicated.  The State responds that the jury was free to reject the testimony of the Appellant's expert and to find the Appellant guilty of DUI per se.  We agree with the State.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).  In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts.  See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.  See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).  Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence.  See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011).

The Appellant was charged with DUI, DUI per se, and failing to drive within a single lane of traffic.[3]  Generally, a person commits DUI based on impairment when the person drives or is in physical control of a vehicle on any public road in this state while

---

[3] The State dismissed the charge of failing to drive within a single lane of traffic.

the person is under the influence of an intoxicant.  Tenn. Code Ann. § 55-10-401(a)(1).  A person commits DUI per se when the person drives or is in physical control of a vehicle on any public road in this state while the alcohol concentration of the person's blood is .08 percent or more.  Tenn. Code Ann. § 55-10-401(a)(2).

Taken in the light most favorable to the State, the proof adduced at trial revealed that Trooper Street stopped the Appellant's vehicle after seeing the vehicle make a large swerve while changing lanes and drive across the fog line.  The Hummer pulled onto the shoulder of the road, and Trooper Street approached the vehicle.  Trooper Street smelled the odor of alcohol as he spoke with the Appellant.  When asked about the odor, the Appellant said that he had been at a sports bar with friends, drinking and playing games.  Trooper Street saw a can of beer in the vehicle, had the Appellant exit the vehicle, and had him perform field sobriety tests.  The Appellant exhibited a number of clues of impairment during the tests.  The Appellant agreed to give a blood sample, and testing later revealed that the Appellant's blood alcohol level was .10 percent.

We note that although the Appellant claims that the testimony of his expert called into question the accuracy of the blood alcohol content determined by the TBI, the jury, as the trier of fact, is free to reject the testimony of any expert it finds to be in conflict with the facts of the case.  State v. Thompson, 151 S.W.3d 434, 440 (Tenn. 2004); State v. Thomas Len Profitt, No. E2002-02396-CCA-R3-CD, 2004 WL 298377, at *8 (Tenn. Crim. App. at Knoxville, Feb. 17, 2004).  Moreover, this court has previously stated that "a proper blood alcohol test administered at a reasonable time after the [accused] has been driving, which reflects a blood alcohol content of [.08 percent] or higher, constitutes circumstantial evidence upon which the trier of fact may, but is not required to, convict the [accused] of DUI [per se]."  State v. Greenwood, 115 S.W.3d 527, 532-33 (Tenn. 2003); see State v. John N. Moffitt, No. W2009-02286-CCA-R3-CD, 2010 WL 5274049, at *2 (Tenn. Crim. App. at Jackson, Dec. 15, 2010).

The Appellant also notes that the jury acquitted him of DUI based upon his indications of impairment, suggesting that the jury did not believe the Appellant was impaired.  This court has stated that "[w]ell-established precedent . . . prevents this court from speculating as to the jury's rationale for convicting him of one count of DUI while acquitting him of another."  State v. Robert White, No. E2010-02238-CCA-R3-CD, 2011 WL 5335471, at *3 (Tenn. Crim. App. at Knoxville, Nov. 2, 2011).  Quoting our supreme court, this court explained:

> "Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment.  Therein lies the essential reasoning.  An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction.  This Court

> will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned."

Id. (quoting Wiggins v. State, 498 S.W.2d 92, 93-94 (Tenn. 1973)). Thus, we conclude that the evidence is sufficient to sustain the Appellant's conviction of DUI per se.

### B. Motion to Suppress

The Appellant contends that his due process rights were violated by the trial court's summary dismissal of his motion to suppress evidence, which he filed prior to his first trial, and requests that we "evaluate the testimony of the trooper at trial to determine the suppression issue." The State responds that the Appellant was required to raise the issue again before his second trial and that as a result of his failure to do so, the issue was waived and can be addressed only for plain error. We conclude that the Appellant did not waive the issue and that the trial court committed reversible error.

On September 30, 2011, the Appellant filed a motion to suppress the evidence adduced as a result of the traffic stop, alleging that the trooper did not have reasonable suspicion to justify the stop. The motion was scheduled to be heard on November 2, 2011, but the Appellant did not appear in court. Defense counsel informed the court that the Appellant lived in Richmond, Virginia; that he was a paramedic; and that he had always been very responsible. Counsel explained that he had been unable to "get a hold of" the Appellant, and the court asked that defense counsel call the Appellant's cellular telephone. The court stated that it would give the Appellant a couple of minutes to arrive and that it would issue a capias for him if he did not arrive by 2:30 p.m. Defense counsel stated that he would call the Appellant's father, who was an attorney in Abingdon, Virginia. When court reconvened, defense counsel stated that he had spoken with the Appellant's father but that counsel had been unable to contact the Appellant.

The State requested that the court dismiss the motion to suppress due to the Appellant's failure to appear. The State advised the court that the officer involved in the stop was present and that "[i]f I had no explanation for the officer not being here, it's almost a guarantee what the court would do." The court denied the motion to suppress, noting that "this Court's time is valuable" and that the Appellant "had an obligation to be here." The court also noted that the Appellant's father was a member of a law firm, "so [the Appellant] knows about the system." Defense counsel stated that he was not going to call the Appellant to testify at the hearing and asked that the court hear the motion without the Appellant's being present. However, the court refused, stating, "I just think it's too risky." Counsel then requested that the court reschedule the hearing, but the court answered, "I don't have room to continue Motion dates, I really don't." The court said

that although it was dismissing the motion, it "may reconsider it at some point."  The court told defense counsel that he could raise the issues at trial and that the trial court would suppress the stop "[i]f it's bad."  The court ordered that the State and defense counsel return to court on December 16, 2011, and stated that the case would be set for trial.  The trial court issued an order denying the motion to suppress based upon the Appellant's failure to appear at the hearing.[4]

The Appellant appeared at the hearing on December 16, and the following colloquy occurred:

> [Trial Court]: Mr. Eskridge -- Eskridge, for whatever it's worth, I'm not happy with you at all.
>
> [Defense counsel]:  He . . .
>
> [Trial court]:  I set aside some time for you to come down here and -- and hear a motion on your DUI case and you didn't have the courtesy to grace this door with your presence.  Can you tell me why that you stood in here with us and the rest of us knew what the date was and you didn't?
>
> [The Appellant]:  Your Honor, I take full responsibility for that.  I simply made . . .
>
> [Trial court]:  Well, you have to take . . . I want to know -- I'm not concerned about the responsibility[,] I want to know why you didn't show up.
>
> [The Appellant]:  Because I wrote the date on my calendar a week later.
>
> [Trial court]:  How can you do that?  What was the date we were supposed to be here?
>
> [Defense counsel]:  It was in November.
>
> [Trial court]:  November what?

_____

[4] On November 7, 2011, the trial court issued a capias for the Appellant based upon his failure to appear.  On December 16, 2011, defense counsel filed a motion to quash the capias, explaining that the Appellant failed to appear because he was mistaken about the date of the hearing.  On December 19, 2011, the capias was recalled.

[The State]:  November the 2nd, Your Honor. . .

[Trial court]:  The 2nd.  Then how can you . . .

[The State]:  . . . at 2 p.m.

[Trial court]:  . . . write November the 2nd and change that to November the 9th, how can you do that?

[The Appellant]:  I didn't change it, sir.  It was already in my calendar as November 2nd -- I mean, excuse me, November 9th.

[Trial court]:  And I set aside a day to hear your motion.  I'm not going to hear it now.  I'm not going to hear your motion.

[Defense counsel]:  We understand that.

[Trial court]:  I gave you a date for that, Mr. Eskridge, and you chose not to be here and I just don't have the time for that.

At that point, the trial court set a trial date for March 7 and instructed defense counsel to "get a big yellow sheet of paper and write it in great big letters for [the Appellant]."

The Appellant did not attempt to raise the issue of the validity of the traffic stop prior to the beginning of the second trial.  He did, however, raise the issue in his motion for new trial.

First, we will address the State's waiver argument.  Our supreme court has observed that requiring a defendant to reiterate a motion to suppress or raise a contemporaneous objection to testimony after a trial court has overruled a defendant's suppression motion is "idle ceremony and a useless gesture."  Goines v. State, 572 S.W.2d 644, 649 (Tenn. 1978).  The court cautioned that appellate courts "do not demand that counsel engage in futile efforts[, especially when f]urther effort would have been argumentative, repetitious and foredoomed to certain failure."  Id.  To that end, appellate courts do not "require counsel to make technical, argumentative or repetitious objections to issues which have already been ruled upon."  State v. Walker, 910 S.W.2d 381, 408 (Tenn. 1995) (citing State v. McGhee, 746 S.W.2d 460, 464 (Tenn. 1988)).  In any event, based upon the trial court's comments, we are not convinced that additional attempts by

defense counsel to obtain a hearing on the merits of the motion would have been successful.

Moreover, the record does not reflect that the court required that the parties refile any or all motions before the second trial commenced or that there was a need to do so. Nothing of an evidentiary nature changed between the first and second trials; in other words, no further proof could have, or would have, been raised in a second suppression motion than was raised in the suppression motion filed prior to the first trial. See State v. Andrew Reginald Mackinnon, No. E2012-00594-CCA-R3-CD, 2013 WL 2326885, at *9 (Tenn. Crim. App. at Knoxville, May 29, 2013). Therefore, we reject the State's waiver argument.

Next, we must determine whether the trial court erred by summarily denying the motion. Tennessee Rule of Criminal Procedure 12(b)(2)(c) requires that a motion to suppress be filed before trial. The Appellant complied with that Rule. Rule 12 further provides,

> The court shall decide each pretrial motion before trial unless it finds good cause to defer a ruling until trial or after a verdict. The court shall not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal. When factual issues are involved in deciding a motion, the court shall state its essential findings on the record.

Tenn. R. Crim. P. 12(e); see also State v. Aucoin, 756 S.W.2d 705, 709 (Tenn. Crim. App. 1988). "Generally then, under the plain language of Rule 12(b) and (e), once a pretrial motion is made, a trial court must decide the motion before trial if it is 'capable of determination without the trial of the general issue.'" State v. Goodman, 90 S.W.3d 557, 561 (Tenn. 2002) (emphasis added) (quoting Tenn. R. Crim. P. 12(b)). "This rule avoids the unnecessary interruption and inefficiency caused by removing the jury from the courtroom to conduct hearings on motions filed during the course of trial, and the rule ensures the right of the State to appeal an adverse ruling of the trial court without implicating double jeopardy considerations." Id.

A defendant's failure to ensure that a trial court rules on a motion to suppress prior to trial usually results in waiver. Aucoin, 756 S.W.2d at 709. However, "if the defendant asks for a hearing prior to trial, but the trial judge refuses to grant the defendant a hearing, the trial judge commits error unless the record reflects good cause for deferring the hearing on the motion." Id.

In the instant case, the trial court was upset when the Appellant failed to appear at the suppression hearing and expressed concern about the impact of the Appellant's failure

to appear on the court's docket.  At a subsequent hearing, the Appellant told the trial court that his absence was the result of a mistake, but the court refused to hold the hearing, stating that the Appellant "chose not to be here."  We note that nothing indicates the Appellant had been late for or absent from court previously or had been uncooperative in any way.  In fact, counsel advised the trial court at the November 2 hearing that the Appellant had been very responsible.  Counsel also advised the court during the same hearing that "I know his dad said he started a brand new job yesterday as a paramedic and those guys do crazy hours."  Therefore, while we can appreciate the trial court's frustration with the Appellant's failing to appear on November 2, we do not think the Appellant's conduct justified the extraordinary sanction of summarily denying his motion to suppress.  Accordingly, we conclude that the trial court erred by denying the motion without a hearing.  See State v. Winebarger, 70 S.W.3d 99, 102 (Tenn. Crim. App. 2001) (concluding "that an appeal by a defendant in a criminal case from general sessions court is of such significance that it should not be dismissed merely because a defendant is one hour late for court"); see also State v. Jimmy Sprague, No. E2010-00288-CCA-R3-CD, 2011 WL *6 (Tenn. Crim. App. at Knoxville, Aug. 3, 2011) (stating that in some circumstances, a defendant may assert mistake as an affirmative defense to the charge of failure to appear).

Next, we must determine the effect of the error.  Ordinarily, when we review a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).  Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise."  Id.  Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo.  See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).  Furthermore, the prevailing party is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence."  Odom, 928 S.W.2d at 23.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures."  In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression.  State v. Richards, 286 S.W.3d 873, 878 (Tenn. 2009).  However, if the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement," the evidence will not be suppressed.  State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998).  Our courts have thus articulated three categories of police-citizen interaction and their corresponding evidentiary requirements: "(1) full-scale arrest, which must be supported by probable cause; (2) brief investigatory detention, which must be supported by reasonable suspicion of criminal activity; and (3)

brief police-citizen encounter that requires no objective justification." State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009) (citations omitted); see also State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006).

One such exception to the warrant requirement exists when a law enforcement officer conducts an investigatory stop based upon a reasonable suspicion supported by specific and articulable facts that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); see also Keith, 978 S.W.2d 861, 865 (Tenn. 1998). Our supreme court has stated that "when a police officer seizes a motorist by turning on his blue lights in order to pull the motorist over, the stop must pass constitutional muster." State v. Smith, 484 S.W.3d 393, 400 (Tenn. 2016). The stop "will pass constitutional muster if the officer has 'probable cause' to believe that the motorist has committed a traffic offense." Id. An intoxicated driver, though, may engage in unusual driving behavior that does not necessarily violate any traffic laws. Id. In that situation, a police officer who lacks probable cause to seize a motorist, may still initiate a brief, investigatory traffic stop if he possesses a "'reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.'" Id. at 401 (quoting State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000)). Analyzing "whether reasonable suspicion existed in a particular traffic stop is a fact-intensive and objective analysis" and "a court must consider the totality of the circumstances." State v. Garcia, 123 S.W.3d 335, 344 (Tenn. 2003).

Turning to the instant case, the Appellant contends that Trooper Street had no reasonable suspicion to stop the Hummer and that this court can rule on the motion to suppress based on the officer's trial testimony about his reasons for stopping the vehicle. The State argues that the Appellant is not entitled to relief because our supreme court held in Smith that crossing over a fog line, which Trooper Street testified to in this case, gives the officer probable cause, not just reasonable suspicion, for the stop. We disagree with both parties.

In order to resolve the issue based on Trooper Street's trial testimony, "we would be forced to act as the fact-finder, assess the credibility of the [witness], and weigh the evidence, which clearly we are not permitted to do." State v. Christopher Perry, No. W2004-03004-CCA-R3-CD, 2005 WL 3533338, at *6 (Tenn. Crim. App. at Jackson, Dec. 22, 2005). As this court has explained,

> This court reviews the application of the law to the facts de novo. If the findings are incomplete and/or the record is insufficient, de novo review cannot be performed if the issue presented is factually controlled. De novo review is permitted to prevent a miscarriage of justice resulting from the legal determination of a single judge, not to reconstruct

- 12 -

the factual determinations of the trial court.  Thus, if the trial court fails to perform its fact-finding obligations, as required by Tennessee Rule of Criminal Procedure 12(e), an appellate court is prevented from completing any meaningful review of the law in the absence of any facts.

Id.

As to the State's claim that the Appellant is not entitled to relief because Trooper Street testified that the Appellant crossed the fog line, which gave the officer probable cause to stop the Hummer, we initially note that no video exists that would presumably show the vehicle crossing the fog line.  Therefore, we would still have to make a credibility determination regarding the trooper's testimony.  Regardless, the State has misconstrued Smith.  In that case, our supreme court held that crossing over a fog line, unlike crossing over a double yellow line, "does not create an offense that always may be discerned simply by observation."  Smith, 484 S.W.3d 393 at 403.  The court specifically rejected that an officer's observing a motorist cross over a fog line gives the officer probable cause to stop the vehicle and held that "the totality of the circumstances may provide a reasonable suspicion sufficient to initiate a traffic stop to investigate the possible violation."  Id. at 410.

Accordingly, we conclude that the trial court committed reversible error by summarily denying the Appellant's motion to suppress and that his conviction must be reversed.  The case is remanded to the trial court for an evidentiary hearing on the Appellant's motion and a new trial.

### III.  Conclusion

We conclude that the evidence is sufficient to support the Appellant's conviction.  However, we also conclude that the trial court committed reversible error by summarily denying the Appellant's motion to suppress.  Therefore, the Appellant's conviction is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
NORMA MCGEE OGLE, JUDGE